OPINION
{¶ 1} Appellants Wausau Business Insurance Company ("Wausau") and National Union Fire Insurance Company ("National Union") appeal the decision of the Stark County Court of Common Pleas that denied their motions for summary judgment and concluded they were required to provide coverage under their respective policies of insurance. The following facts give rise to this appeal.
 {¶ 2} This appeal arises out of an accident that occurred on October 21, 1998. On this date, Christal Webb was a front seat passenger in a vehicle operated by Antha Eckelberry. Antha Eckelberry's mother, Laverne Hildebrant, owned the vehicle involved in the accident. The accident occurred due to the negligence of Antha Eckelberry. Christal Webb died as a result of the accident.
 {¶ 3} At the time of the accident, Christal Webb was a minor residing with her mother, Cynthia Webb, father, Craig Webb, and brother, Christopher Webb. Christal and Christopher Webb were both employed at Wal-Mart Stores, Inc. National Union insured Wal-Mart Stores, Inc. Cynthia and Craig Webb had a UM/UIM motorists policy with Progressive Preferred Insurance Company. Cynthia Webb was employed at Coastal Pet Products, Inc. Westfield insured Coastal Pet Products, Inc. Craig Webb was employed by the Alliance City School District. Wausau insured the Alliance City School District.
 {¶ 4} On October 18, 2000, the Webbs filed this lawsuit against all known insurance carriers. Westfield, who at that time was a defendant, filed an answer and cross-claim. On December 8, 2000, Motorists Mutual Insurance Company, the insurer for Antha Eckelberry, paid its per person limits of $100,000, to the Webbs, for a release of all claims. On December 29, 2000, Westfield settled all claims with the Webbs for $1,400,000. In exchange for payment by Westfield, and with the understanding that Westfield would pursue claims for contribution against National Union, Progressive and Wausau, the Webbs released all claims against all insurers. The Columbiana County Court of Common Pleas, Probate Division, approved the settlement.
 {¶ 5} On January 25, 2001, Westfield moved the trial court to re-caption the case, naming Westfield as plaintiff for purposes of its cross-claim for contribution and/or indemnification against the other UM/UIM carriers. The trial court granted said motion on January 29, 2001. Thereafter, Westfield moved the trial court for summary judgment on its cross-claim against National Union and Wausau claiming the Webbs were entitled to coverage under the policies and that such coverage should be provided on a pro rata basis. Westfield specifically addressed the policy definition of "insured," under the policies, and the fact that any asserted rejection of UM/UIM coverage would be ineffective as it was not in accordance with Ohio law.
 {¶ 6} National Union responded to the motion and filed its own motion for summary judgment claiming that Westfield was not entitled to contribution as it acted as a "volunteer" in settling all claims with the Webbs; that the Webbs materially breached the terms of the policy by assigning their rights to Westfield without National Union's consent; and that even if National Union was found liable for a pro rate share, it should not be bound by the dollar amount paid by Westfield in settlement of the claim. National Union did not deny that Christal and Christopher Webb were insureds under the policy, nor did National Union assert that there was an effective rejection of UM/UIM coverage.
 {¶ 7} Wausau also filed its own motion for summary judgment asserting the Alliance City School Board was without authority to purchase UM/UIM coverage for its employees and therefore, theScott-Pontzer[1] analysis did not apply; that R.C. 3937.18 has no application to a policy of insurance issued to a political subdivision pursuant to R.C. 4509.71; that the term "employee" should be statutorily defined by R.C. 2744.01 to include only those individuals acting within the scope of their employment; and that if the trial court found such coverage to exist, Westfield still could not recover as it acted as a "volunteer" in making its payment to the Webbs.
 {¶ 8} On December 26, 2001, the trial court overruled National Union's and Wausau's motions for summary judgment. The trial court found that coverage existed under both policies. The trial court sustained, in part, and overruled, in part, Westfield's motion for summary judgment. The trial court determined Westfield was not a "volunteer" in settling the claims of the Webbs and there had been no material breach of the policies of insurance. Finally, the trial court found that Westfield's, National Union's and Wausau's policies of insurance should be applied on a pro rata basis.
 {¶ 9} Thereafter, on April 17, 2002, the trial court ordered binding arbitration on the remaining issues concerning damages setting forth that upon an award of damages, Wausau shall be required to pay Westfield an amount equal to seven percent of the arbitration award; National Union shall be required to pay seventy-four percent of the arbitration award with Westfield's maximum recovery being $1,134,000. The trial court also stated that any award shall be subject to an award of prejudgment interest and post-judgment interest in Westfield's favor.
 {¶ 10} The parties timely filed their notices of appeal and set forth the following assignments of error for our consideration:
"Wausau's Assignments of Error"
 {¶ 11} "I. The trial court erred in applying Scott-Pontzer to school district insurance policies and ruling that the Webbs were insureds for purposes of underinsured motorist coverage under the Wausau policy.
 {¶ 12} "II. The trial court erred as a matter of law in finding that Westfield was not a volunteer and therefore, entitled to recover under Wausau's policy.
 {¶ 13} "III. The trial court erred as a matter of law in failing to rule that the Webbs materially breached the Wausau policy when the Webbs settled their claim without the consent of Wausau.
 {¶ 14} "IV. The trial court erred in overruling Wausau's motion for summary judgment and granting Westfield's motion for summary judgment.
 {¶ 15} "V. The trial court erred in ordering binding arbitration subject to an award of prejudgment interest."
"National Union's Assignments of Error"
 {¶ 16} "I. The trial court erred as a matter of law in finding that Westfield was not a volunteer and entitled to recover under National Union's policy.
 {¶ 17} "II. The trial court erred as a matter of law in finding that the Webbs did not materially breach National Union's policy when the Webbs settled their claim without the consent of National Union.
 {¶ 18} "III. The trial court erred in overruling National Union's motion for summary judgment and in granting Westfield's motion for summary judgment."
"Summary Judgment Standard"
 {¶ 19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 20} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 21} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Wausau's and National Union's assignments of error.
"Wausau's First Assignment of Error"
 {¶ 22} In its First Assignment of Error, Wausau maintains the trial court erred when it applied the Scott-Pontzer case to the insurance policy it issued to Alliance City School District and concluded the Webbs were insureds for purposes of UM/UIM coverage. We disagree.
 {¶ 23} Wausau sets forth several arguments in support of this assignment of error. First, Wausau contends the business auto policy it issued to Alliance City School District applies only to vehicles owned or operated by the school district and does not apply to an employee or family members occupying a personal vehicle for personal reasons. The policy issued to Alliance City School District contains an uninsured motorists coverage endorsement. The Ohio Uninsured Motorists Coverage — Bodily Injury Form defines an "insured" as follows:
 {¶ 24} "B. Who Is An Insured
 {¶ 25} "1. You.
 {¶ 26} "2. If you are an individual, any `family member.'
 {¶ 27} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'. The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 28} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 29} Wausau argues Christal Webb did not satisfy any of the above definitions of "insured" because the named insured in the Business Auto Coverage Form is Alliance City School District. Since the named insured is not an individual, subsection two of the definition of "insured" does not apply. Further, Christal Webb was not occupying a covered "auto" at the time of the accident. Finally, no "insured" sustained damages and therefore, subsection four does not apply.
 {¶ 30} Wausau concedes that if we find the Scott-Pontzer case applicable to the case sub judice, Westfield would be entitled to recover UM/UIM benefits under its business auto policy. However, Wausau maintains the Scott-Pontzer case is not applicable because the present matter involves a policy of insurance issued to a board of education, as opposed to a private corporation, and a board of education is not statutorily permitted to obtain UM/UIM coverage for an employee not working within the scope of his or her employment. Specifically, Wausau contends a board of education is created by statute and its powers and obligations are defined and limited by statute. Wolfe v. Cuyahoga Falls City Sch. Dist.Bd. of Edn. (1990), 52 Ohio St.3d 222, 223. A board of education does not have any powers not granted to it by statute. Id. Consequently, a board of education cannot enter into a contract that exceeds its statutorily created rights. Empire Gas Corp. v. Westerville Bd. of Edn. (1995),102 Ohio App.3d 613, 619.
 {¶ 31} Three sections of the Revised Code permit a board of education to purchase insurance covering automobiles. These sections of the Revised Code are as follows: R.C. 9.83; R.C. 3313.201; and R.C.3327.09. R.C. 9.83 permits a political subdivision to procure a policy of insurance insuring its employees against liability for injury, death or loss to person or property that arises out of the operation of a motor vehicle by the employees while engaged in the course of their employment or official responsibilities for the political subdivision. R.C. 3313.201
and R.C. 3327.09 specifically address the purchase of uninsured motorist insurance by a board of education.
 {¶ 32} R.C. 3313.201 provides, in pertinent part:
 {¶ 33} "The board of education of each school district shall procure a policy or policies of insurance insuring officers, employees and pupils of the school district against liability on account of damage or injury to persons and property, * * * and including liability on account of death or accident by wrongful act, occasioned by the operation of a motor vehicle * * * owned or operated by the school district. Each board of education may supplement said policy or policies of insurance with collision, medical payments, comprehensive, and uninsured motorists insurance. * * *."
 {¶ 34} R.C. 3327.09 provides, in pertinent part:
 {¶ 35} "The board of education of each school district shall procure for the benefit of its employees who operate a school bus, motor van, or other vehicle used in the transportation of school children motor vehicle liability insurance for injuries to persons and property. * * * Each board of education may procure uninsured motorists insurance."
 {¶ 36} Read in conjunction, R.C. 3313.201 and R.C. 3327.09 permit a board of education to purchase UM/UIM coverage for injuries arising from accidents involving vehicles owned by the board of education or used in the transportation of students. Wausau maintains these statutes do not permit a board of education to purchase UM/UIM coverage for an employee's personal vehicle that is not being used to transport students under the authority of the board of education.
 {¶ 37} Wausau also maintains a board of education is only permitted to purchase UM/UIM coverage for employees working within the course and scope of their employment. R.C. 2744.01(B) defines an "employee" as an individual "* * * who is authorized to act and is acting within the scope of his employment for a political subdivision." In theScott-Pontzer case, the Ohio Supreme Court found the automobile policy did not have a restriction limiting coverage only to an employee acting within the scope of their employment.
 {¶ 38} Wausau contends that although the business auto policy it issued to Alliance City School District does not specifically contain language limiting coverage to employees acting within the scope of their employment, pursuant to the definition of "employee" contained in R.C.2744.01(B) and the application of R.C. 3313.201 and R.C. 3327.09, by operation of law, such coverage applies only to employees acting within the scope of their employment. Thus, Wausau concludes the trial court's decision permits the Webbs to recover for injuries and damages for which the General Assembly does not permit a board of education to purchase insurance.
 {¶ 39} The second argument Wausau makes, in support of its First Assignment of Error, is that R.C. 3937.18 does not apply to a political subdivision. Instead, Wausau maintains R.C. 3937.18 applies only to an "automobile liability or motor vehicle liability policy of insurance" as defined in R.C. 3937.18(L). At the time of the accident, Section (L) set forth the following definition:
 {¶ 40} "(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 {¶ 41} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 42} "(2) Any umbrella liability policy of insurance."
 {¶ 43} Division (K) of R.C. 4509.01 defines "proof of financial responsibility" as:
 {¶ 44} "* * * proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."
 {¶ 45} R.C. 4509.71 specifically provides that Sections 4509.01 to4509.79, except section 4509.06, do not apply to any motor vehicle owned and operated by any political subdivision of this state. Based upon the above statutes, Wausau interprets R.C. 3937.18 to require every liability policy of insurance to contain UM/UIM coverage in order to satisfy the financial responsibility laws. However, Wausau concludes this interpretation does not conflict with the express powers of a board of education because the financial responsibility laws do not apply to a policy of insurance issued to a political subdivision. Thus, Wausau concludes that if we find R.C. 3937.18 applicable to a board of education, such application would violate the powers of a board of education as a board of education is statutorily not required to purchase UM/UIM coverage.
 {¶ 46} In support of its arguments, Wausau cites the recent case of Nationwide Agribusiness Ins. Co. v. Roshong (July 9, 2002), C.A.6 No. 01-4009, unreported. In Roshong, Janet Bowser and Earl Roshong were involved in separate automobile accidents while employed by their respective public school districts. Id. at 1. As a result of the accidents, Bowser was killed and Roshong was severely injured. Id. Richard Bowser, as executor of Janet Bowser's estate, and Roshong subsequently filed insurance claims pursuant to the identical UM/UIM motorists provisions in the applicable school districts' automobile liability policies, both of which were issued by Nationwide Agribusiness Insurance Company ("Nationwide"). Id.
 {¶ 47} Nationwide denied both claims and sued in federal district court for a judgment declaring that neither Janet Bowser nor Roshong were covered by the UM/UIM provision at the time of their accidents because neither were acting within the scope of their employment when the accidents occurred. Id. Both Richard Bowser and Roshong counterclaimed for a declaratory judgment to establish their right to recover the UM/UIM benefits. Id. The district court granted summary judgment in favor of Richard Bowser and Roshong, pursuant to the Scott-Pontzer case, and denied Nationwide's motion for summary judgment. Id.
 {¶ 48} On appeal, Nationwide argued "* * * the state (sic) of Ohio does not give a public school district the authority to obtain UM/UIM coverage that insures its employees when the employees are acting outside the scope of their employment." Id. at 3. Thus, the courts may not construe the UM/UIM provision to provide coverage that the school districts allegedly had no authority to obtain. Id. In addressing the appeal, the court of appeals recognized the Ohio Supreme Court has not yet decided whether its decision in Scott-Pontzer applies where the named insured is a school district. Id. The court of appeals also recognized that only two of the twelve appellate court districts in the State of Ohio have considered the application of Scott-Pontzer to school district insurance policies: Allen v. Johnson, Wayne App. No. 01CA0046, 2002-Ohio-3404 and Mizen v. Utica Natl. Ins. Group 147 Ohio App.3d 274,2002-Ohio-37. Id. Both courts concluded that Scott-Pontzer applied to a UM/UIM provision in an insurance contract purchased by a school district. Id.
 {¶ 49} In the Allen case, the Ninth District Court of Appeals stated:
 {¶ 50} "The school district's authority to purchase particular types of insurance has no bearing on determining the scope of UM/UIM coverage under the terms of the policies. A challenge to the school district's legal authority to enter into these insurance contracts would be a defense to enforcement of the contract; it has no bearing on the construction of its terms." Allen at 4.
 {¶ 51} The court concluded that whether each of the Allens was covered under the policy issued to the school district had to be determined by interpreting the relevant policy language in light of theScott-Pontzer decision. Id. The court found that the school district's commercial automobile policy defined "WHO IS AN INSURED" for purposes of UM/UIM coverage with the identical definition as contained in theScott-Pontzer case. Id. at 7. The court also found the declarations page in the school district's commercial auto policy listed only the school district as the named insured. Id. Based upon these similarities, the court applied the Scott-Pontzer case to the policy issued to the school district.
 {¶ 52} In the Mizen case, the Eighth District Court of Appeals concluded that R.C. 3313.203 does not limit a school district's authority to purchase insurance coverage. Id. at 279. Instead, it merely provides that a board of education may purchase liability insurance for employees within the scope of their employment. Id. The Court found that because the two policies under consideration contained identical provisions construed by the Ohio Supreme Court in Scott-Pontzer, a school district is not prohibited from obtaining insurance for its employees who are acting outside the scope of their employment. Id. at 280.
 {¶ 53} Despite these two state appellate court decisions and the fact that a federal court may not disregard the decision of a state intermediate appellate court when deciding a diversity action unless it is convinced by other persuasive data that the highest court of the state would decide otherwise, the court of appeals, in Roshong, reversed the decision of the district court. In so doing, the court of appeals found the relevant inquiry to be whether a statute specifically provides a school district with authority to obtain UM/UIM coverage, on behalf of employees, acting beyond the scope of their duties. Id. at 4. The court of appeals concluded a board of education may enter into a contract only as authorized by statute and no statute in the Revised Code permits a board of education to purchase this type of coverage. Id.
 {¶ 54} Although Wausau's arguments have been accepted by various trial courts throughout the State of Ohio and at least one federal court of appeals, we conclude, for the following reasons, the trial court did not err when it applied the Scott-Pontzer analysis to the policy of insurance Wausau issued to Alliance City School District.
 {¶ 55} Wausau's Ohio Uninsured Motorists Coverage — Bodily Injury Form contains the identical definition of "insured" as addressed in the Scott-Pontzer case. Further, Wausau's attempt to distinguish the case sub judice from the Scott-Pontzer case on the basis that the policy was issued to a board of education instead of a private corporation lacks merit because, just as with a private corporation, a board of education can act only by and through real live persons and it cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle.
 {¶ 56} We also note the policy at issue contains no language limiting the availability of UM/UIM coverage only to employees acting within the scope of their employment.[2] Instead, Wausau relies upon R.C. 2744.01(B) which defines an "employee" for purposes of political subdivision tort liability. We find it would be improper to permit Wausau to rely upon a definition contained in the Revised Code to impose a scope of employment requirement. The contract of insurance does not incorporate the term "employee," as defined in R.C. 2744.01(B), although Wausau could have included this definition when defining the term "insured." Also, R.C. 2744.01(B) defines "employee" for purposes of political subdivision tort liability and the definition has nothing to do with UM/UIM coverage for employees.
 {¶ 57} The United States District Court for the Southern District of Ohio, Western Division, reached this same conclusion and found the definition of "employee" contained in R.C. 2744 is not useful in determining whether school districts are prohibited from purchasing insurance for employees who are not within the scope of their employment. Morgenstern v. Nationwide Ins. Cos. (Sept. 18, 2001), S.D. Ohio No. C2-00-1284, unreported. The court stated as follows:
 {¶ 58} "Statutory definitions containing the limitations cited by Nationwide are expressly limited to the provisions of sub chapter 2744 of the Ohio Revised Code in the context of tort liability against the political subdivision. * * * This case does not involve a tort claim against Big Walnut, and the provisions of sub chapter 2744 are wholly inapplicable to this case. Instead this case involves the interpretation of a contract. Further, a person is an `employee,' in the term's ordinary meaning, at all times during the term of employment. Nationwide's argument conflates the notion of employee with the question of whether an admitted employee is acting within the scope of employment. This latter issue is wholly unaddressed by the Policy language." Id. at 5.
 {¶ 59} We also disagree with Wausau's argument that it is not bound by the requirements of R.C. 3937.18. This statue contains no exemption for certain insurers, from the mandates of the UM/UIM statute, depending on the identity of the insured. Rather, the statute explicitly provides that it applies to any automobile liability or motor vehicle liability policy of insurance delivered or issued for delivery in this state. In conjunction with this argument, Wausau maintains R.C. 3937.18
mandates that every auto liability policy of insurance contain UM/UIM coverage and that this requirement would conflict with R.C. 4509.71, which exempts political subdivisions from financial responsibility laws.
 {¶ 60} In making this argument, Wausau misinterprets R.C. 3937.18. This statute does not require that every auto policy contain UM/UIM coverage. Nor does it require insureds to obtain UM/UIM coverage. Instead, the statute imposes upon an insurer the duty to offer such coverage. However, we find Wausau's argument regarding whether R.C. 3937.18
conflicts with R.C. 4509.71 irrelevant as the record in this case indicates the board of education did, in fact, purchase auto liability insurance with an endorsement for UM/UIM coverage. Such coverage did not arise by operation of law.
 {¶ 61} We also conclude Wausau may not avoid its obligation as an automobile liability insurer because its insured is a board of education, created by statute, with only limited authority to purchase UM/UIM coverage. The statutes governing boards of education only address how those boards may expend public funds. These statutes do not address the requirements that may be imposed by statute, or operation of law, upon a particular insurer that may ultimately issue a policy to a board of education.
 {¶ 62} Further, there is no evidence, in the record, that the board of education purposely purchased UM/UIM coverage to cover its employees acting outside the scope of their employment. Rather, it is Wausau's ambiguous definition of "insured" that results in coverage. Therefore, this coverage did not result by any action taken by the board of education beyond its statutory scope of authority. The board of education acted within its statutory scope of authority when it purchased UM/UIM coverage. However, Wausau failed to define the term "insured" in such a way that it was not ambiguous and would only apply to employees acting within the scope of their employment.
 {¶ 63} Our decision is in accord with at least three other appellate court districts that have addressed this issue. In addition to the Allen and Mizen cases, supra, the Tenth District Court of Appeals recently decided the case of G. Donald Roberts, Adm. et al. v. WausauBusiness Insurance Co., et al., Franklin App. Nos. 02AP-04, 02AP-05, 2002-Ohio-4734, in which the Franklin County Court of Appeals found the analysis of Scott-Pontzer applied to a policy of insurance issued to a school district.
 {¶ 64} Accordingly, we conclude the trial court properly appliedScott-Pontzer to the policy of insurance Wausau issued to Alliance City School Board and the Webbs are insureds for purposes of UM/UIM coverage under Wausau's policy.
 {¶ 65} Wausau's First Assignment of Error is overruled.
"Wausau's Second Assignment of Error and National Union's FirstAssignment of Error"
 {¶ 66} In Wausau's Second Assignment of Error and National Union's First Assignment of Error, appellants maintain the trial court erred, as a matter of law, when it found Westfield was not a volunteer and therefore, entitled to recover under Wausau's and National Union's policies of insurance. We disagree.
 {¶ 67} In support of their assignments of error, Wausau and National Union rely upon the case of Farm Bureau Mut. Auto. Ins. Co. v.Buckeye Union Cas. Co. (1946), 147 Ohio St. 79. In the Farm Bureau case, the Ohio Supreme Court held as follows:
 {¶ 68} "6. One who, with knowledge of the facts and without legal liability makes a payment of money, thereby becomes a volunteer.
 {¶ 69} "7. Equity will not aid a volunteer.
 {¶ 70} "8. If the policy of each of several insurers limits its liability to such proportion of a loss as the amount insured by such insurer bears to the total applicable limit of liability of all valid and collectible insurance against such loss, the payment by one insurer of more than its proportion of a loss creates no right to contribution from the other insurers." Id. at paragraphs six, seven and eight of the syllabus.
 {¶ 71} Wausau and National Union argue Westfield admits that it paid more than its proportionate share of total liability and that it did so with full knowledge of what it was paying. Westfield's admission is evidenced in the release it executed with the Webbs. The release provides, in pertinent part:
 {¶ 72} "With respect to the payment by Westfield Insurance Company of the amount set forth herein, it is expressly understood and agreed that said payment by Westfield Insurance Company has been made on behalf of all Releasees and has been accepted by Releasors in full and final settlement. It is expressly agreed and acknowledged that by making such payment, Westfield Insurance Company has paid more than its proportionate share of the common liability of all Releasees, has paid more than its proportionate share of Releasors' claimed damages, and that by making such payments, Westfield Insurance Company has discharged the common liability and extinguished the liability of all Releasees, thereby entitling Westfield Insurance Company to seek contribution from all other Releasees named herein. It is affirmatively agreed and expressly acknowledged that this settlement agreement is reasonable and has been entered into in good faith between Releasors and Westfield Insurance Company."
 {¶ 73} Wausau and National Union maintain that because Westfield settled the entire case, without their agreement to settle or contribution from Wausau or National Union, Westfield is a volunteer and not entitled to contribution. Wausau and National Union also contend that Westfield may not maintain a contribution claim because such a claim exists only by statute pursuant to R.C. 2307.31 through R.C. 2307.32. These sections of the Revised Code pertain to contribution among joint tortfeasors
 {¶ 74} In support of their arguments, Wausau and National Union cite the case of Ins. Co. of N. Am. v. Travelers Ins. Co. (1997),118 Ohio App.3d 302, wherein Insurance Company of North America ("INA") assumed the defense of its insured without reservation of rights. Id. at 307. INA later determined that it did not provide coverage for the claim and sought to have another insurer, Travelers, assume the defense. Id. at 307-308. Travelers declined to assume the defense since INA had assumed the defense without a reservation of rights, it waived tender of the suit and indemnity and therefore, Travelers concluded it was under no obligation to participate. Id. at 308. Thereafter, INA settled the claim and sought indemnification from Travelers. Id. On appeal to the Eighth District Court of Appeals, the court held that INA was a volunteer and was not entitled to recovery. Id. at 314. The court stated:
 {¶ 75} "In the instance case, INA determined at least by July 1994 that it had no coverage on the Brewer claim against Morse because the injury did not arise from Otis's operations or from supervision by Morse at the Otis site. Despite this knowledge, INA continued its settlement negotiations after Travelers refused to assume Morse's defense. We recognize that INA was in a `bad faith' predicament that counseled against withdrawing from the case, but that was a situation of its own making because of its lack of diligence in failing to reserve its rights and unexplained delay in determining its coverage obligations. Since INA's own position was that it was under no legal obligation to make payment on the Brewer claim, it acted as a volunteer when it provided the settlement funds. The trial court erred in relying on equitable principles to hold that Travelers was bound to indemnify INA because the ancient maxim of equity applies: `Equity will not aid a volunteer.'" Id. at 318.
 {¶ 76} In the case sub judice, the trial court relied upon the case of Aetna Cas. Sur. Co. v. Buckeye Union Cas. Co. (1952),157 Ohio St. 385, when it concluded that Westfield was not a volunteer. Judgment Entry, Dec. 26, 2001, at 7. The trial court relied upon this case even though it involved a claim for subrogation by a secondary insurer against a primary insurer. Id. at 9. In the Aetna case, the Ohio Supreme Court held that a secondary insurer who had entered into a settlement with its insured after the primary insurer had wrongfully denied coverage and refused to defend or participate in the settlement, was not a volunteer in making its payment and seeking to recover from the primary insurer by way of subrogation. The Court reasoned as follows:
 {¶ 77} "* * * The Aetna policy provided that it `shall be excess insurance over any other valid and collectible insurance available to the insured.' So long as Buckeye disclaimed coverage and refused to participate in any way in negotiating settlement or defending the action, there was no admitted or established `other valid and collectible' insurance. Aetna was, therefore, forced to defend and pay any resulting judgment — or settle. Under its contract of insurance with Butler, Aetna could not abandon him merely because Buckeye chose to deny coverage and gamble on future exoneration. * * *
 {¶ 78} "* * *
 {¶ 79} "Buckeye could not escape ultimate liability merely by denying coverage and refusing to defend the action. It cannot be immunized from payment by its own breach of contract. [Citation omitted.]
 {¶ 80} "* * *
 {¶ 81} "Aetna had an interest to protect and a legal obligation to pay. In effecting settlement and making payment under such circumstances Aetna was not a volunteer.
 {¶ 82} "In 50 American Jurisprudence, 698, Section 22, it is said:
 {¶ 83} "`Generally speaking, the party making payment is a volunteer if, in doing so, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation.' * * *
 {¶ 84} "`Where the person paying the debt has an interest to protect, he is not a stranger.'"* * *
 {¶ 85} "Therefore, applying the principles of equity and natural justice, Aetna has the equitable right to recover from Buckeye and it also has the right to recover by way of subrogation under the policy." (Emphasis sic.) Id. at 391-393.
 {¶ 86} The trial court found it significant that the Court in theAetna case discussed the Farm Bureau case and noted that while the policies of both companies contained clauses which provided for prorating the claims, "`[b]oth insurance companies admitted their coverage and the liability of their insured for some amount of damages on the claim asserted.'" Judgment Entry, Dec. 26, 2001, at 8, citing Aetna at 394. The trial court noted the case currently under consideration differed factually in that Wausau and National Union both denied coverage to the Webbs. Id. at 8. Therefore, Westfield did not settle the claim with knowledge of the overlapping coverage because not until the trial court's ruling did Westfield know for certain that Wausau's and National Union's policies would be found to provide coverage. Id.
 {¶ 87} The trial court also found public policy supported its conclusion because Westfield should not be penalized for owning up to its coverage responsibilities, while Wausau and National Union have failed to do so. Id. at 9. The trial court concluded that to find Westfield a volunteer under the facts of this case would result in rewarding an insurance company for its wrongful failure to fulfill the terms of its contract at the expense of the company who properly acknowledges its responsibility. Id. It would also encourage a carrier to wrongfully deny coverage in the hopes that another carrier would step up, admit coverage, and pay the claim, thereby absolving the obstinate carrier of any responsibility to fulfill its contractual obligations. Id.
 {¶ 88} We agree with the trial court's conclusion that Westfield is not a volunteer as a result of its settlement with the Webbs. From a public policy standpoint, the Ohio Supreme Court decided the Farm Bureau
case in 1946, well before the General Assembly enacted the UM/UIM statute and the Ohio Supreme Court issued its decision in the Scott-Pontzer
case. In fact, the Court now requires insurance companies to be vigilant in recognizing and fulfilling their contractual rights. See Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339. Accordingly, to toll the running of prejudgment interest, insurers must make payment to injured insureds as soon as possible.
 {¶ 89} We also agree with the trial court's conclusion that theFarm Bureau case is factually distinguishable from the case sub judice. In Farm Bureau, both insurance companies admitted their coverage and the liability of their insured for some amount of damages and both insurers engaged in extensive settlement negotiations. However, in the matter currently before the court, neither Wausau nor National Union admitted coverage nor engaged in settlement attempts.
 {¶ 90} The Ins. Co. of N. Am. case is also distinguishable as it involved an insurer owing only secondary coverage who assumed the defense of an insured even though the primary insurer never refused to defend the case. Id. at 314. The Eighth District Court of Appeals recognized the secondary insurer would not normally be deemed a volunteer and would have a right of recovery against the primary insurer, but because the secondary insurer assumed the defense without reserving its rights, it was deemed a volunteer. Id. However, in the case sub judice, Wausau and National Union both denied coverage, which left only Westfield to defend the claim made by the Webbs.
 {¶ 91} Thus, Westfield had an interest to protect and a legal obligation to pay. In the event the trial court determined no other insurance was available, Westfield would be contractually responsible for the entire amount of the settlement with the Webbs less the amount received from the tortfeasor as set-off. Westfield's contractual obligation became pro rata, under the excess insurance clause, only when the trial court determined other insurance was available after reviewing Wausau's and National Union's policies. Therefore, Westfield did not settle the claim with knowledge of overlapping coverage as it was unknown, at the time of settlement, whether Wausau's and National Union's policies of insurance provided coverage. Westfield was not a party who had no right or interest of its own to protect. Instead, it had a legal obligation, to the Webbs, and therefore, was not a volunteer.
 {¶ 92} Finally, we do agree with Wausau's and National Union's arguments that Westfield may not seek recovery under R.C. 2307.31 and R.C. 2307.32. A review of the cases that have permitted recovery by an insurance company do so under the theory of subrogation and not contribution among joint tortfeasors.
 {¶ 93} Accordingly, Wausau's Second Assignment of Error and National Union's First Assignment of Error are overruled.
"Wausau's Third Assignment of Error and National Union's SecondAssignment of Error"
 {¶ 94} Wausau and National Union both maintain, under their respective assignments of error, the trial court erred as a matter of law when it found the Webbs did not materially breach Wausau's and National Union's policies of insurance when they settled their claim, with Westfield, without the consent of Wausau and National Union. We disagree.
 {¶ 95} In support of their arguments, both Wausau and National Union refer to specific language contained in their policies of insurance. Wausau refers to language in Section F of the common policy conditions portion of its policy which provides, as follows:
 {¶ 96} "F. Transfer of your rights and duties under this policy
 {¶ 97} "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
 {¶ 98} "If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property."
 {¶ 99} Wausau also relies upon Section C of the Ohio Uninsured Motorists Coverage Endorsement, which provides, in pertinent part:
 {¶ 100} "C. Exclusions
 {¶ 101} "This insurance does not apply to:
 {¶ 102} "1. Any claim settled without our consent. * * *"
 {¶ 103} Based upon the above language, Wausau contends its consent was necessary and had to be obtained prior to assigning the rights of an insured against Wausau. Since neither the Webbs nor Westfield obtained Wausau's consent, Westfield is precluded from recovering against Wausau.
 {¶ 104} In support of its assignment of error, National Union refers to Section C of its Ohio Uninsured Motorist Endorsement which provides, in pertinent part:
 {¶ 105} "C. Exclusions
 {¶ 106} "This insurance does not apply to:
 {¶ 107} "Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph F.3.b. of the definition of `uninsured motor vehicle.'"
 {¶ 108} Paragraph F titled "Additional Definitions" provides, in pertinent part, as follows:
 {¶ 109} "3. `Uninsured motor vehicle' means a land motor vehicle or trailer:
 {¶ 110} "* * *
 {¶ 111} "b. Which is an underinsured motor vehicle. An `underinsured motor vehicle' means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged but their limits are less than the Limit of Insurance of this coverage[.]"
 {¶ 112} National Union also argues, based upon the language contained in its policy of insurance, that the Webbs were required to obtain its consent before settling their claims with Westfield.
 {¶ 113} In support of their arguments, both Wausau and National Union rely upon the Ohio Supreme Court's recent decision in Fulmer v.Insura Prop. Cas. Ins. Co., 91 Ohio St.3d 85, 2002-Ohio-64. InFulmer, the tortfeasor's insurer offered $37,500 to settle Fulmer's claim against the tortfeasor. Id. at 87. The tortfeasor's policy had liability coverage limits of $50,000. Id. at 86. Although Fulmer believed that her damages exceeded the tortfeasor's policy limit of $50,000, she decided to accept the offer and forgo the additional $12,500 available under the tortfeasor's insurance policy. Id. at 87. Fulmer's acceptance of the settlement offer required her to execute a release of all claims against the tortfeasor. Id.
 {¶ 114} After settling with the tortfeasor, Fulmer requested arbitration with her insurance company, Insura Property Casualty Insurance Company ("Insura") to determine whether she was entitled to underinsured motorist benefits. Id. at 88. Insura rejected Fulmer's request for arbitration on the basis that Fulmer had violated the exhaustion and subrogation clauses of her policy and therefore, forfeited her rights to underinsured motorist benefits. Id.
 {¶ 115} On appeal to the Ohio Supreme Court, the Court concluded that Fulmer had not violated the exhaustion or subrogation clauses and held:
 {¶ 116} "1. When an insured has given her underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying its insured the amount of the settlement offer but does not do so, the release will not preclude recovery of underinsurance benefits. [Citations omitted.]
 {¶ 117} "2. An insured satisfies the exhaustion requirement in the underinsured motorist provision of her insurance policy when she receives from the underinsured tortfeasor's insurance carrier a commitment to pay any amount in settlement with the injured party retaining the right to proceed against her underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's available policy limits. [Citations omitted.]
 {¶ 118} Based upon our review of the Fulmer case, we find it does not support Wausau's or National Union's arguments. Both Wausau and National Union refer to the language contained in paragraph one of the syllabus regarding notice to the underinsurance carrier prior to a tentative settlement and release. Wausau and National Union maintain they did not receive notice of the tentative settlement with Westfield which is a condition precedent to obtaining coverage under their policies.
 {¶ 119} We conclude Wausau has waived the issue of notice and consent to settle for purposes of appeal. Wausau failed to raise this issue in its motion for summary judgment. This is further evidenced, in the trial court's judgment entry, wherein the trial court addressed the issue of notice and consent to settle, as it pertains to National Union, under the heading "The `Assignment' Issue." See Judgment Entry, Dec. 26, 2001, at 9. This issue is not addressed, by the trial court, under the portion of the judgment entry dealing with Wausau's motion for summary judgment. This result is in accord with the general rule that an appellate court will not consider any error which the party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been corrected or avoided by the trial court. Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, paragraph one of the syllabus.
 {¶ 120} In response to National Union's argument, Westfield contends it placed National Union on notice of the Webb claim as early as March 2000. Westfield also maintains National Union was advised by letter and in person, at a pre-trial on December 28, 2000, of Westfield's intention to settle with the Webbs. We have reviewed the record in this matter and find no evidence to support Westfield's argument.
 {¶ 121} However, we do agree with the trial court's conclusion that "[w]hile the general language in the `Common Policy Condition' of the policy provides that consent must be obtained from National Union for any transfer of rights and duties under the policy, the specific language in the `Ohio Uninsured Motorist Coverage' portion of the policy is that consent is not required for a settlement of any claim made with an insurer of an uninsured/underinsured motor vehicle." Judgment Entry, Dec. 26, 2001, at 10. We also agree with the trial court's conclusion that because the policy provisions are conflicting and ambiguous, they must be construed liberally in favor of the insured and strictly against the insurance company. Scott-Pontzer at 665, citing Faruque v. ProvidentLife Acc. Ins. Co. (1987), 31 Ohio St.3d 34.
 {¶ 122} Finally, we decline to rely upon our previous decision inAchauer v. Monroe Guar. Ins. Co., (June 6, 2001), Muskingum App. No. CT2000-0038, as we find it factually distinguishable from the case sub judice. In the Achauer case, two letters were sent to Monroe Guaranty Insurance Co. ("Monroe") advising it that the tortfeasor and the underinsured motorist carrier had tendered their policy limits for settlement in connection with the accident and requesting written permission to accept said settlement offer. Id. at 1. Monroe responded that it was their position that the estate was not entitled to UM/UIM coverage under the policy and that it was not waiving its rights to any other portion of the policy. Id. Thereafter, appellees accepted the settlement offers of the tortfeasor and the underinsured carrier and executed two releases. Id.
 {¶ 123} On appeal to this court, we concluded Monroe failed to protect its subrogation rights under the policy as Monroe had the option to tender payment in accordance with a policy provision that provided that:
 {¶ 124} "A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.'" Id. at 3.
 {¶ 125} Thus, we concluded that Monroe failed to protect its subrogation interest and waived same by failing to advance payment in this matter in accordance with the terms of its policy. Id. In the matter currently before the court, the record is not clear that National Union actually received notice of the proposed settlement due to a lack of evidence, in the record, indicating such. Therefore, the Achauer case is distinguishable on the basis that the insurance company in Achauer
clearly received notice of the proposed settlement, by way of two letters, and failed to protect its subrogation rights.
 {¶ 126} However, as noted above, we still conclude that based upon language contained in the "Ohio Uninsured Motorist Coverage" portion of the policy, consent is not required for a settlement of any claim made with an insurer of an uninsured/underinsured motor vehicle. Accordingly, National Union did not have to consent to the settlement between Westfield and the Webbs.
 {¶ 127} Wausau's Third Assignment of Error and National Union's Second Assignment of Error are overruled.
"Wausau's Fifth Assignment of Error"
 {¶ 128} In its Fifth Assignment of Error, Wausau maintains the trial court erred when it ordered binding arbitration subject to an award of prejudgment interest. We disagree.
 {¶ 129} Wausau's main argument in support of this assignment of error is that Westfield has no contractual relationship with Wausau and therefore, is not the "insured" referred to in Wausau's arbitration clause and has no right to demand arbitration. The arbitration provision in Wausau's policy provides as follows:
 {¶ 130} "ARBITRATION
 {¶ 131} "a. If we [Wausau] and an `insured' [Webbs] disagree whether the `insured' is legally entitled to recover damages from the owner or driver of an `uninsured motor vehicle' or do not agree as to the amount of damages that are recoverable by that `insured,' then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. * * *"
 {¶ 132} The trial court concluded:
 {¶ 133} "* * * [B]ased upon the totality of the circumstances, that because the Webbs would have been entitled to have their damages determined by way of binding arbitration against each of the three insurers, it is only appropriate, fair, and reasonable that an arbitration should determine whether the amount of Westfield's settlement with the Webb's was appropriate and reasonable and what amount of damages Westfield is entitled to recover by way of reimbursement or indemnification." Judgment Entry, Apr. 17, 2002, at 1.
 {¶ 134} We agree with the trial court's conclusion. Wausau also argues, under this assignment of error, that the right to arbitration is not absolute and may be waived. Wausau refers to a case from the Eleventh District Court of Appeals which states the circumstances a court may consider to determine whether a party acted inconsistently with its arbitration rights. These circumstances include: (1) any delay in the requesting party's demand to arbitrate by filing a motion to stay the proceedings pending arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the proceeding; and (3) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts. Glenmoore Builders, Inc. v.Kennedy (Dec. 7, 2001), Portage App. No. 2001-P-0007, at 4, 2001-Ohio-8777.
 {¶ 135} Wausau does not argue Westfield waived arbitration according to any of the grounds listed above. Nor do we find any other conduct by Westfield waived its right to arbitration. Although an argument can be made that Westfield is not the "insured" referred to in the arbitration clause, once Westfield settled with the Webbs and paid more than its share on behalf of Wausau, Westfield had the right, since it was not a volunteer, to pursue reimbursement from Wausau. Westfield specifically reserved this right in the Release it executed with the Webbs.
 {¶ 136} Accordingly, Westfield steps into the shoes of Christal Webb and is entitled to pursue reimbursement from Wausau through binding arbitration, the method of recovery the Webbs would have been entitled to pursue against Wausau had Westfield not paid Wausau's obligation.
 {¶ 137} Wausau's Fifth Assignment of Error is overruled.
"Wausau's Fourth Assignment of Error and National Union's ThirdAssignment of Error"
 {¶ 138} Both Wausau and National Union argue they are entitled to summary judgment. We disagree for the reasons discussed above.
 {¶ 139} Wausau's Fourth Assignment of Error and National Union's Third Assignment of Error are overruled.
 {¶ 140} Accordingly, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Hoffman, P.J., and Edwards, J., concur.
Topic: App. Of Pontzer to School board's Insurance Policy.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.
[2] Wausau's policy does contain language restricting the definition of "insured" in the liability section of the Business Auto Policy.