**EMPIRE GAS CORPORATION, Appellee,**

v.

**WESTERVILLE BOARD OF EDUCATION.**

[Cite as *Empire Gas Corp. v. Westerville Bd. of Edn.* (1995), 102 Ohio App.3d 613.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE07–965.

Decided March 23, 1995.

*Manchester, Bennett, Powers & Ullman* and *Mark A. Beatrice,* for appellee.

*Bricker & Eckler* and *James P. Burnes,* for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Board of Education of Westerville City School District ("board"), appeals from a judgment of the Franklin County Court of Common Pleas granting judgment to plaintiff-appellee, Empire Gas Corporation ("Empire"), on its breach of contract claim against defendant.

In 1982, the board, having decided to convert some of its school buses and other vehicles to propane fuel, advertised for bids from propane gas suppliers. The board's bid specification required that the bids include, among other things, a price per gallon and profit margin per gallon.

Several propane gas suppliers submitted bids. After considering each of the bids, the board determined that Empire was the lowest responsible bidder. On June 28, 1982, upon the recommendation of the superintendent of the school district, the board passed a resolution to purchase propane gas (liquified petrole-

um fuel) from Empire. Neither Empire's bid, nor the board's resolution, addressed either party's responsibility for paying applicable taxes. Indeed, prior to signing the contract, neither party was certain that taxes would be imposed on a school district's purchase of propane gas.

On the day the board passed the resolution to purchase the propane gas, the board's business manager, Dr. Ronald B. Hoekstra, signed a document prepared by Empire entitled "Liquified Petroleum Gas Contract" ("contract"). The contract set forth the profit margin schedule and other terms for the propane gas purchases from July 1, 1982 to June 30, 1987. It also contained a provision concerning the payment of taxes, which stated:

"7. *TAXES.* All taxes, fees, or other charges of any nature, now or hereafter imposed by Federal, State or Local government upon the product sold hereunder, or upon the transportation, storage, use or inspection thereof, shall be added to the price set forth in paragraph '4' hereof and paid by Buyer to Seller."

No certificate of adequate resources ("fiscal certificate") was attached to the contract, as required by R.C. 5705.412.

During the five-year term of the agreement, Empire invoiced the board monthly for its fuel purchases; the invoices did not include a request for payment of motor vehicle fuel taxes. However, in 1988, the State Auditor's Office audited Empire and assessed tax liability and penalties for Empire's sale of propane gas to the board for the period beginning April 1984. Empire appealed the assessment, but it eventually settled the matter, paying the state of Ohio $79,877.03.

On May 13, 1988, Empire sent the board a letter demanding payment of $74,988.12, $57,683.17 for the tax liability and $17,304.95 as penalty, per the tax provision of the contract. Empire modified its demand in September 1988, requesting that the board pay $71,200.83. The board never submitted payment to Empire.

Empire thus brought this contract action against the board in January 1989 to recover $71,200.83. The matter was heard before a referee, who issued a report adopting the findings of fact and conclusions of law submitted by Empire, and recommending that judgment be entered for Empire in the amount of $79,877.03.

The board submitted objections to the referee's findings of fact and conclusions of law, arguing that they were contrary to the evidence presented at the hearing and to Ohio law. The trial court, however, issued a written decision adopting the referee's report and recommendation, and it entered judgment accordingly.

The board appeals, assigning the following errors:

"I. The trial court erred in concluding that where a bid for a public contract does not include any mention of over $56,000 in taxes and the board of education's

acceptance of the bid likewise makes no mention of such an obligation that the board had a contractual obligation to pay motor vehicle taxes.

"II. The trial court erred in concluding that where a bid for a public contract does not include any mention of motor vehicle or any other taxes and the board of education's acceptance of the bid likewise makes no mention of such an obligation that the board was obligated under a document that provided for the payment of over $56,000 in taxes.

"III. The trial court erred in concluding that over $56,000 in cost not listed in a bid for a competitively bid public contract could be imposed upon a public body.

"IV. The trial court erred in concluding that a contract existed between the board and Empire Gas where the fiscal certificate required by Ohio Revised Code § 5705.412 was not executed in connection with the alleged contract.

"V. The trial court erred in concluding that where a bid for a public contract does not include any mention of motor vehicle taxes and the board of education's acceptance of the bid likewise makes no mention of such an obligation that the board's business manager may obligate the board to pay over $56,000 in taxes and over $20,000 in interest.

"VI. The trial court erred in concluding that a motor fuel supplier (Empire Gas) that does not submit a bill or a claim for motor vehicle fuel taxes to the purchaser (board) throughout the term of the alleged contract between the parties may, after the contract has expired, seek to recover the taxes and interest.

"VII. The trial court erred in concluding that the board is obligated to pay interest which accrued solely as the result of appellee Empire Gas' violation of its statutory obligation to paying [sic] motor vehicle taxes when due."

█ The board's fourth assignment of error raises the threshold issue in this appeal and asserts that the contract between the board and Empire is void because it lacked a fiscal certificate as required by R.C. 5705.412. Thus, we address it first.

█ "Ohio boards of education are purely creations of statute. [Their] authority to act is derived from and strictly limited to powers that are clearly and expressly granted to them by statute, or clearly therefrom implied by necessity. Their powers are strictly construed with any actions taken beyond the clear provisions of the law being void." *Brownfield, Bowen, Bally & Sturtz v. Bd. of Edn.* (1978), 56 Ohio App.2d 10, 11, 10 O.O.3d 20, 21, 381 N.E.2d 207, 208; *CADO Business Sys. of Ohio v. Cleveland Bd. of Edn.* (1983), 8 Ohio App.3d 385, 8 OBR 499, 457 N.E.2d 939. Thus, we must examine the appropriate statutes in evaluating the board's action in contracting with Empire.

R.C. 5705.412 applies to contracts made by boards of education. *Tri–County N. Loc. School Bd. of Edn. v. McGuire & Shook Corp.* (S.D.Ohio 1989), 748 F.Supp. 541; *CADO, supra,* 8 Ohio App.3d at 388–389, 8 OBR at 502–503, 457 N.E.2d at 942–944; *Riordan v. Youngstown Bd. of Edn.* (Oct. 17, 1986), Mahoning App. No. 86 C.A. 33, unreported, 1986 WL 11725. The statute provided:

" 'Notwithstanding section 5705.41 of the Revised Code, *no school district shall* adopt any appropriation measure, *make any contract,* give any order involving the expenditure of money, or increase during any school year any wage or salary schedule *unless there is attached thereto a certificate* signed by the treasurer and president of the board of education and the superintendent that the school district has in effect for the remainder of the fiscal year and the succeeding fiscal year the authorization to levy taxes including the renewal of existing levies which, when combined with the estimated revenue from all other sources available to the district at the time of certification, are sufficient to provide the operating revenues necessary to enable the district to operate an adequate educational program for all the days set forth in its adopted school calendars for the current fiscal year and for a number of days in the succeeding fiscal year equal to the number of days instruction was held or is scheduled for the current fiscal year * * *. *Every contract made,* order given, or schedule adopted or put into effect *without such a certificate shall be void, and no payment of any amount due thereon shall be made.* * * * ' " (Emphasis added.)

The requirements of R.C. 5705.412 are clear and specific: "A school board shall not make a contract without attaching thereto a certificate of sufficient funding, and if a contract is made without such a certificate, then the contract is void and, without question, the board has no legally enforceable duty to pay." *Riordan, supra.* Ohio courts have consistently enforced the requirements of R.C. 5705.412, despite hardships the requirements may impose on one of the parties. See *Brownfield, supra* (law firm unable to collect fees for legal services performed); *CADO, supra* (contract held void because the certificate did not contain the three signatures required by R.C. 5705.412).

The record indicates no R.C. 5705.412 fiscal certificate was attached to the contract between Empire and the board. Apparently in an attempt to avoid the harsh consequences of strictly applying R.C. 5705.412 to the parties' contract, the trial court nonetheless found that the amended appropriation certificates accompanying the appropriation measures for the years 1982 through 1987 were sufficient to comply with R.C. 5705.412 concerning the contract between these parties. We disagree.

Initially, the amended appropriation certificates were not attached to the contract at issue, as R.C. 5705.412 requires. Moreover, we cannot ignore that the amended appropriation certificates, completed at the end of the fiscal year,

certified that the board had adequate resources to satisfy the *aggregate* expenditures for the fiscal year *just ending;* a revenue and expense summary was attached to each of the certificates, with the expense summaries containing a line item expenditure for the school district's vehicular fuel purchases. Thus, the amended appropriation certificates lack two additional requisites under R.C. 5705.412. While they provide retrospective evidence at the end of the fiscal year that the contract was approved by the school board, that adequate resources existed for the fuel purchases of the fiscal year just ending, and that the contract was carried out by the parties over the five-year period, they nonetheless do not state prospectively, as required under R.C. 5705.412, that adequate resources exist at the time the contract is made. Further, while R.C. 5705.412 requires a certificate for each contract, the amended appropriation certificates are an aggregate certification not for the contract, but for the district's appropriation, which also is required to have a fiscal certificate under R.C. 5705.412.

In the final analysis, R.C. 5705.412 requires a school district to provide a fiscal certificate for its appropriation measures and for its contracts. To construe the amended appropriation certificate as a fiscal certificate under R.C. 5705.412 for the contract at issue not only allows a certificate accompanying an appropriation measure, in effect, to absolve a school district from the statutory requirement as to contracts, but contrary to the language of the statute, it also permits the school board to validate contracts under R.C. 5705.412 retrospectively through its appropriation measures.

As a result, even if each of the above-noted deficiencies in the amended appropriation certificates alone would not be fatal to the parties' compliance with R.C. 5705.412, taken together they demonstrate that the parties failed to comply with the requirements of R.C. 5705.412 when the contract for the purchase of propane gas was made.

■ Although the result is harsh, the statutory language is direct. R.C. 5705.412 mandates that a fiscal certificate, in the appropriate form, be attached to the contract between a school board and the other party for the particular transaction.[1] Contracts between a party and a school board which disregard the requirement are void. *Tri–County, supra.* As a result, " '[s]uppliers, vendors and contractors dealing with boards of education should realize that public policy demands that to bind the state, the county, school districts or any political subdivision for supplies of any kind the purchase agreement must be in substan-

---

1. A school board may enact its own rules that allow certain expenditures to be made under the less burdensome procedures under R.C. 5705.41; otherwise, the requirements of R.C. 5705.412 must be followed. *CADO, supra,* 8 Ohio App.3d at 388–389, 8 OBR at 502–503, 457 N.E.2d at 942–944.

tial conformity with the statutes on the subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and finally, that courts will not lend their aid to enforce such contracts, directly or indirectly, but will leave the parties, where they have placed themselves.'" *CADO, supra,* 8 Ohio App.3d at 389, 8 OBR at 503, 457 N.E.2d at 944 (quoting *Buchanan Bridge Co. v. Campbell* [1899], 60 Ohio St. 406, 54 N.E. 372).

Nonetheless, Empire argues that the requirements of R.C. 5705.412 should not apply to its contract with the board because the contract is a continuing one; it asserts that since the contract provides for purchases over a period of five years on a fixed profit-per-gallon basis, compliance with R.C. 5705.412 should be construed in light of the provisions of R.C. 5705.41 and 5705.44.

R.C. 5705.41, which contains a less stringent certification process than R.C. 5705.412, is a general statute concerning the appropriation of and expenditure of funds by taxing units, while R.C. 5705.412 is a specific statute addressing the appropriation and expenditure of funds by school districts. Thus, as to contracts with school boards, the provisions of R.C. 5705.412 control over those contained in R.C. 5705.41. *Tri–County; CADO, supra.*

R.C. 5705.44 addresses continuing contracts and provides:

"When contracts or leases run beyond the termination of the fiscal year in which they are made, the fiscal officer of the taxing authority shall make a certification for the amount required to meet the obligation of such contract or lease maturing in such fiscal year. The amount of the obligation under such contract or lease remaining unfulfilled at the end of a fiscal year, and which will become payable during the next fiscal year, shall be included in the annual appropriation measure for the next year as a fixed charge."

However, R.C. 5705.44, too, is a general statute; R.C. 5705.412, enacted after R.C. 5705.44, controls contracts made by school boards. *Tri–County; CADO, supra.* Indeed, nothing in R.C. 5705.412 suggests an exception for continuing contracts, despite other exceptions contained in the section. Moreover, contrary to the provisions of R.C. 1.51 and instructive case law, Empire's assertions invite us to ignore R.C. 5705.412 in its entirety, rather than attempt to reconcile the provisions of R.C. 5705.412 with those of R.C. 5705.44.

Specifically, under R.C. 1.51, conflicting statutory provisions, where possible, are to be construed to give effect to both. Only where the conflict is deemed irreconcilable does R.C. 1.51 mandate that one provision shall prevail over the

other. *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 567 N.E.2d 1018.[2] Thus, the Ohio Supreme Court has instructed:

"It is a fundamental rule of statutory construction that statutes relating to the same subject matter should be construed together. *Maple Hts. Teachers Assn. v. Maple Hts. Bd. of Edn.* (1983), 6 Ohio St.3d 314, 317, 6 OBR 374, 376, 453 N.E.2d 619, 621. 'In Ohio and elsewhere the generally accepted rule is that statutes relating to the same subject or matter, although passed at different times and making no reference to each other, are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent.' *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 466, 58 O.O. 315, 316–317, 132 N.E.2d 191, 194. Consistent with this court's holdings, when rules or statutes that relate to the same subject matter are construed, 'the doctrine of *in pari materia* favors consistent, as opposed to inconsistent, construction.' *Austin v. Miami Valley Hosp.* (1984), 19 Ohio App.3d 231, 232, 19 OBR 382, 384, 483 N.E.2d 1185, 1187." *State v. Leichty* (1993), 68 Ohio St.3d 37, 39, 623 N.E.2d 48, 50. See, also, *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 372–373, 643 N.E.2d 1129, 1131–1132.

Clearly, some tension exists between R.C. 5705.412 and 5705.44, as R.C. 5705.412 does not appear to contemplate that a school board may enter into a contract for a period of more than one year. Nonetheless, R.C. 5705.412 and 5705.44 may be construed together so as to give effect to both by requiring that continuing contracts with school boards must have attached to the contract a certificate meeting the requirements of R.C. 5705.412, certifying that the district can meet the obligation of the contract maturing in the first fiscal year. Thereafter, the amount of the obligation under such contract remaining unfulfilled at the end of a fiscal year, which will become payable during the next fiscal year, is to be included in the annual appropriation measure the next year as a fixed charge under R.C. 5705.44. While such an interpretation does not excuse a school board from attaching a certificate as required by R.C. 5705.412 to the contract, it nonetheless assures compliance with R.C. 5705.44.

Given the foregoing, R.C. 5705.44 does not excuse the lack of an R.C. 5705.412 certificate accompanying Empire's contract with the board, and the contract thus is unenforceable.

Unquestionably, the application of R.C. 5705.412 produces harsh results. The inequity resulting from its provisions is only exacerbated to the extent school boards selectively rely on R.C. 5705.412 to void contracts of their choosing.

---

**2.** R.C. 1.51 provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

Nonetheless, the legislature has delineated quite clearly the results of failing to comply with R.C. 5705.412, and we are not free to ignore those provisions.

Given the foregoing, defendant's fourth assignment of error is sustained. Further, our disposition of the fourth assigned error renders moot defendant's remaining assignments of error, and we decline to address them. App.R. 12(A).

Having sustained defendant's fourth assignment of error, we reverse the judgment of the trial court and remand this cause with instructions to dismiss plaintiff's complaint.

*Judgment reversed*
*and cause remanded*
*with instructions.*

PETREE and DESHLER, JJ., concur.