Debra L. MORGENSTERN, Administrator of the Estate of Steven P. Morgenstern, Deceased, Plaintiff–Appellee,

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, Defendant–Appellant.

No. 01–4139.

United States Court of Appeals, Sixth Circuit.

Oct. 16, 2003.

Mark Mathew Kitrick, Mark D. Lewis, Kitrick & Lewis, Columbus, OH, for Plaintiff–Appellee.

Nicholas E. Subashi, Brian L. Wildermuth, Law Offices of Nicholas E. Subashi, Dayton, OH, for Defendant–Appellant.

Before MOORE and CLAY, Circuit Judges; and LAWSON, District Judge.*

CLAY, Circuit Judge.

Defendant Nationwide Agribusiness Insurance Company ("Nationwide") appeals from the judgment entered by the district court on September 18, 2001, granting summary judgment in favor of Plaintiff Debra L. Morgenstern. *See Morgenstern v. Nationwide Agribusiness Ins. Co.*, No. C2–00–1284, 2001 WL 1681114, at *1 (S.D.Ohio Sept. 18, 2001). Plaintiff had brought this civil action seeking a declaratory judgment that she was legally entitled to underinsured motorist (UIM) coverage under Nationwide's automobile policy, pursuant to the Ohio Supreme Court decisions of *Scott–Pontzer v. Liberty Mutual Fire Insurance Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999) and *Ezawa v. Yasuda Fire & Marine Insurance Co. of America*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999). On appeal, Nationwide claims that *Scott–Pontzer* and *Ezawa* are distinguishable be-

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

cause the motorist insurance policy in question had been issued to a school district, not to a corporation. Nationwide alternatively argues that the insurance policy's "other-owned auto" exclusion precludes Plaintiff from recovering the policy's proceeds under the facts of this case. Based on the following, we **REVERSE** the judgment of the district court.

## I. BACKGROUND

The facts are not in dispute. On July 2, 1999, Plaintiff's son, Steven Morgenstern, was driving his motorcycle west on State Route 36 in Delaware County, Ohio. Also driving on Route 36 was James Norman, whose van negligently crossed the center line and struck Steven's motorcycle, killing him.

At the time of the accident, Norman had liability insurance; however, due to various claims waged against him in the aftermath of the automobile accident, it is undisputed that Norman was "underinsured." The parties also do not dispute that the amount of UIM coverage provided under Steven Morgenstern's automobile insurance policy insufficiently compensated him for his injuries. It is also undisputed that Steven owned the motorcycle that he was operating at the time of the automobile accident.

At the time of the accident, Steven Morgenstern resided with Plaintiff, who was employed by Big Walnut Local School District ("Big Walnut"). Big Walnut owned and was the named insured on an insurance policy issued by Nationwide for a policy period covering the date of the accident (the "Nationwide policy" or the "policy").[1] The Nationwide policy included business automobile coverage with an uninsured/underinsured motorist ("UM/UIM") coverage limit of $1,000,000.

In the policy, an "insured" person is defined as follows:

B. Who is Insured:
1. You
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

(J.A. at 230.) "You" is defined in the Nationwide policy as the "named insured," and the "named insured" is listed in the policy as Big Walnut.

The Nationwide policy also contains several exclusions. The exclusion at issue is located in section 5b of the Ohio Uninsured Motorist Coverage—Bodily Injury section:

C. Exclusions
This insurance does not apply to:
* * *
5. Bodily injury sustained by:
a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage form;
b. *Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorist Coverage under this Coverage Form....*

(*Id.*) (emphasis added).

On October 10, 2000, Plaintiff, as the Administrator of the Estate of Steven

1. Specifically, the policy period was January 1, 1999 through January 1, 2000.

Morgenstern, filed an action in the Court of Common Pleas, Delaware County, Ohio, requesting a declaratory judgment that she was legally entitled to UIM coverage under the Nationwide policy. Nationwide removed the action to the United States District Court for the Southern District of Ohio, and then filed an answer.

The parties subsequently filed motions for summary judgment. The district court then issued an order directing the parties to file additional briefs on the issue of whether the "other-owned auto" exclusion in the Nationwide policy was enforceable with respect to Plaintiff. The parties filed additional briefs on the issue. On September 18, 2001, the district court issued an opinion and order granting Plaintiff's summary judgment motion and denying Nationwide's summary judgment motion. Judgment for Plaintiff was entered on the same day, and this timely appeal followed.

## II. JURISDICTION

The district court properly had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen of Ohio,[2] Nationwide is a citizen of Iowa, and the amount in controversy for the case exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).[3] We have jurisdiction over Nationwide's appeal pursuant to 28 U.S.C. § 1291.

2. We note that Steven Morgenstern was a citizen of Ohio. Therefore, Plaintiff, as the legal representative of Steven Morgenstern's estate, is a citizen of Ohio only. 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."); *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 597 n. 3 (6th Cir.2002).

## III. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo. Herman v. Fabri–Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir.2002). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *PDV Midwest Refining, L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir.2002) (citing Fed.R.Civ.P. 56(c)). In doing so, we must draw all reasonable inferences from the evidence in a light most favorable to the non-moving party. *Id.* (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir.2000)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Furthermore, we review a district court's interpretation of an insurance contract *de novo. Vencor, Inc. v. Standard Life & Accident Ins. Co.*, 317 F.3d 629, 634 (6th Cir.2003) (citing *BP Chemicals, Inc. v. First State Ins. Co.*, 226 F.3d 420, 424 (6th Cir.2000)).

## IV. ANALYSIS

A federal court sitting in diversity must apply the substantive law of the forum

3. We further note that if Plaintiff were suing Nationwide in lieu of the tortfeasor, James Norman, on liability issues, this case would be a "direct action" and subject to the additional requirements of 28 U.S.C. § 1332(c)(1) in order to attain subject matter jurisdiction. *See Lee–Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898, 899–900 (6th Cir.2003). However, because Plaintiff is suing Nationwide for UIM coverage on contract theories, this case is not a direct action, and 28 U.S.C. § 1332(c)(1) does not apply. *See id.*

state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Talley v. State Farm Fire & Cas. Co.,* 223 F.3d 323, 326 (6th Cir.2000). Specifically, we "must follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley,* 223 F.3d at 326 (citing *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir. 1999)). When the state supreme court has not yet decided the issue before us, we must "anticipate how that court would rule." *Imperial Hotels Corp. v. Dore,* 257 F.3d 615, 620 (6th Cir.2001) (quoting *Bailey Farms, Inc. v. NOR–AM Chem. Co.,* 27 F.3d 188, 191 (6th Cir.1994)). In so anticipating, we must consider decisions of a state's intermediate appellate courts unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT&T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *see also Comm'r v. Bosch's Estate,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

Nationwide advances two principal arguments on appeal. First, Nationwide contends that Steven Morgenstern was not an "insured" under the Nationwide policy because the *Scott–Pontzer* doctrine cannot be applied to motor vehicle insurance policies issued to school districts. Alternatively, Nationwide argues that even if Steven Morgenstern was an "insured" under the Nationwide policy, he was nevertheless excluded from coverage, based on the Nationwide policy's "other-owned auto" exclusion. We observe that the Ohio Supreme Court has not yet spoken as to either of these issues.[4] We therefore must anticipate how the Ohio Supreme Court would

be likely to rule. *Imperial Hotels Corp.,* 257 F.3d at 620. With these standards in mind, we conclude that Steven Morgenstern was an "insured" under the Nationwide policy but is excluded from coverage due to the Nationwide policy's "other-owned auto" exclusion.

## A. Legal Background: *Scott–Pontzer* and *Ezawa*

In *Scott–Pontzer,* the Ohio Supreme Court held that unless specifically excluded therefrom, an employee is covered under the UM/UIM provisions of an employer's automobile insurance policy, even if the employee was driving a privately-owned vehicle outside the scope of employment at the time of the accident. 710 N.E.2d at 1120–21. In *Scott–Pontzer,* Christopher Pontzer was driving his spouse's automobile outside the scope of his employment when he collided with the car of a negligent (and underinsured) motorist and was killed. Plaintiff, Pontzer's surviving spouse, sought UIM coverage from a business automobile insurance policy issued to Pontzer's employer, a corporation. That policy listed Pontzer's employer as the named insured and contained a provision about who was "insured" that was identical to the language in the Nationwide policy at issue in this case. *Id.* at 1118–19.

In opposing coverage, the insurance company argued that under the policy's terms, only the corporation and not Pontzer was not an insured, for purposes of UIM coverage, because "you" meant the "named insured," which was the corporation. *Id.* at 1119. The Ohio Supreme Court, however, reasoned that Ohio Revised Code § 3937.18, which at the time

---

4. We are aware, however, that the Ohio Supreme Court recently has decided to examine the application of *Scott–Pontzer* to both of these issues. *See Allen v. Johnson,* 97 Ohio St.3d 1460, 778 N.E.2d 1051 (2002) (allowing appeal as to the application of *Scott–Pontzer* to school districts); *Agudo De Uzcha v. Derham,* 96 Ohio St.3d 1511, 775 N.E.2d 854 (2002) (allowing appeal as to the "other-owned auto" exclusion issue).

required insurers to offer UM/UIM coverage in every automobile insurance policy,[5] was designed by the Ohio legislature to protect persons, not automobiles. Therefore, the court continued, "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile. suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons-including to the corporation's employees." *Id.* Upon determining that the policy language was ambiguous, the court construed the ambiguities against the drafter, i.e., the insurer. *Id.*

The insurer also argued that even if Pontzer was an insured, he was excluded from UIM benefits because the accident did not occur in the course of his employment. The supreme court rejected this argument as well, noting that the policy contained no restriction on coverage based on whether or not an insured was driving within the scope of his employment. *Id.* at 1120.

Since deciding *Scott–Pontzer* in 1999, the Ohio Supreme Court has since extended the doctrine to hold that an employee's child (as a family member of the "insured") was entitled to the UM/UIM coverage under an employer's automobile insurance policy. *Ezawa,* 715 N.E.2d at 1142.

**B. The Ohio Supreme Court Would Likely Hold that Steven Morgenstern was an "Insured" Under the Nationwide Policy.**

The parties do not dispute that the relevant policy language in *Scott–Pontzer* and

the relevant language in the Nationwide policy are identical. Moreover, the ambiguities about who was a "you" in *Scott–Pontzer* appear just as saliently in the present case, given that the "named insured" in the Nationwide policy is a school district, and school districts, like corporations, "cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." *Scott–Pontzer,* 710 N.E.2d at 1119. Thus, just as "naming the corporation as the insured is meaningless unless the coverage extends to ... [its] employees," *id.,* naming a school district as the insured similarly is meaningless unless the coverage extends to the district's employees. Finally, just as in *Scott–Pontzer,* no scope of employment limitation is present in the Nationwide policy. We therefore are persuaded that *Scott–Pontzer* logically extends to the present facts.

Nationwide contends that we must distinguish the present facts from those in *Scott–Pontzer* because the Nationwide policy was issued to a school district, not a corporation, and the rationale behind *Scott–Pontzer* does not extend to policies issued to school districts. Nationwide's argument is two-fold, and we reject both aspects of its argument.

**1. Ohio Law's Definition of "Employee"**

■ First, Nationwide argues that construing the policy to include as "you" employees acting outside the scope of their employment would be contrary to Ohio law. Specifically, it points to Ohio Revised

---

**5.** Under the old § 3937.18, all insurers were required to offer UM/UIM coverage with their automobile liability insurance policies, and if the insurer failed to offer coverage, UM/UIM coverage would be implied by operation of law. *Gyori v. Johnston Coca-Cola Bottling*

*Group, Inc.,* 76 Ohio St.3d 565, 669 N.E.2d 824, 826 (1996). However, § 3937.18 was amended in 2001 to provide that an insurer may, but is not required to, offer UM/UIM coverage. OHIO REV.CODE ANN. § 3937.18(A).

Code § 2744.01(B), which defines an "employee" of a political subdivision as an "officer, agent, employee, or servant ... who is authorized to act and is acting within the scope of [his or her] employment for a political subdivision." OHIO REV.CODE ANN. § 2744.01(B). Thus, Nationwide concludes, construing the Nationwide policy to allow a political subdivision employee to benefit from UM/UIM coverage while outside the scope of employment would violate Ohio statutory law.

We disagree. While it is true that statutory definitions can be relevant in construing a contract, the statute on which Nationwide relies is not relevant. Instead, the definition of "employee" found in § 2744.01(B) pertains to the Ohio Revised Code's Chapter 2744: Political Subdivision Tort Liability. Section 2744.02 provides that, with certain exceptions, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to a person or property allegedly caused by any act or omission of the political subdivision or [one of its employees]." OHIO REV. CODE ANN. § 2744.02(A)(1). One of the exceptions applies to injury, death, or loss stemming from "the negligent operation of any motor vehicle by [the political subdivision's] employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority." OHIO REV.CODE ANN. § 2744.01(B)(1). This makes perfect sense, as a political subdivision generally need not concern itself with liability issues relating to an employee acting *outside* the scope of his or her employment. There is no reason to believe that the definition of an "employee," as it relates to a political subdivision's vicarious liability for an employee's tortious conduct, should be transported into an insurance contract providing UM/UIM coverage for that political subdivision. In the context of Chapter 2744, the employee is the (alleged) tortfea-

sor; in the present context, the employee is the injured person seeking redress. Further indication that § 2744.01 is inapplicable is its express limitation of the definition of "employee" to "as used in this chapter." OHIO REV.CODE ANN. § 2744.01.

Ohio case law further supports our view. All of Ohio's courts of appeals that have addressed this issue have rejected this argument. *See Stubbins v. Nationwide Agribusiness Ins. Co.*, No. F–02–031, 2003 WL 21500198, at *2–3 (Ohio App. 6th Dist. June 30, 2003); *Wilson v. Haimerl*, No. CA2002–08–017, 2003 WL 1795600, at *4 (Ohio App. 12th Dist. Apr. 7, 2003); *Westfield Ins. Co. v. Wausau Bus. Ins. Co.*, Nos. 2002CA00138 and 2002CA00150, 2002 WL 32098117, at *8 (Ohio App. 5th Dist. Dec. 30, 2002); *Roberts v. Wausau Bus. Ins. Co.*, 149 Ohio App.3d 612, 778 N.E.2d 594, 602 (2002); *Mizen v. Utica Nat'l Group*, 147 Ohio App.3d 274, 770 N.E.2d 97, 101 (2002). Additionally, the Ohio Supreme Court has held that, based on *Scott–Pontzer* considerations, an employee of a township (i.e., a political subdivision, rather than a corporation) was entitled to UM/UIM coverage. *Headley v. Ohio Gov't Risk Mgmt. Plan*, 86 Ohio St.3d 64, 711 N.E.2d 679, 679 (1999). Based on these indications from the supreme court and courts of appeals, as well as our own legal analysis, we are persuaded that the Ohio Supreme Court would not draw a corporation-school district distinction based on Ohio Revised Code § 2744.01(B).

### 2. Ohio Law's Restrictions on a School District's Contractual Authority

■ Next, Nationwide argues that Ohio law prohibits school districts from obtaining the UIM coverage Plaintiff seeks under the Nationwide policy. Nationwide correctly observes that a school district's ability to contract is strictly limited to

"what has been conferred on [it] by statute or what is clearly implied therefrom." *Wolf v. Cuyahoga Falls City Sch. Dist. Bd. of Educ.*, 52 Ohio St.3d 222, 556 N.E.2d 511, 513 (1990). Nationwide then argues that because no statute expressly authorizes a school district to obtain UIM coverage for employees driving their own cars outside the scope of their employment, then the contractual provision in the Nationwide policy specifying other coverage is necessarily void.

The parties have identified three statutes relating to a school district's ability to obtain insurance coverage. It is not disputed that two of these sections do not grant such express authority.[6] The third, Ohio Revised Code § 3313.201, provides the following:

> The board of education of each school district shall procure a policy or policies of insurance insuring officers, employees, and pupils of the school district against liability on account of damage or injury to persons and property, including insurance on vehicles operated under a course in drivers education approved by the state department of public safety and including liability on account of death or accident by wrongful act, occasioned by the operation of a motor vehicle, motor vehicles with auxiliary equipment, or all self-propelling equipment or trailers owned or operated by the school district. Each board of education may supplement the policy or policies of insurance with collision, medical payments, comprehensive, and uninsured motorists insurance....

OHIO REV.CODE ANN. § 3313.201(A). The district court held that this provision ex-

pressly permitted a school district to obtain the insurance, focusing on the last sentence of the statute in doing so. *Morgenstern*, 2001 WL 1681114, at *4. A number of Ohio's courts of appeals similarly have rejected Nationwide's construction of § 3313.201. *See Stubbins*, 2003 WL 21500198, at *2–3; *Gates v. Nationwide Ins. Co.*, No. CA2002–10–086, 2003 WL 1795595, at *1 (Ohio App. 12th Dist. Apr. 7, 2003); *Roberts*, 778 N.E.2d at 601–02; *Mizen*, 770 N.E.2d at 101.

We do see some merit in Nationwide's statutory interpretation. A fair reading seems to indicate that the first sentence of § 3313.201 requires a school district to obtain an insurance policy "insuring officers, employees, and pupils ... against liability ... occasioned by the operation of a motor vehicle ... *owned or operated by the school district.*" Under this interpretation. non-school district vehicles are not contemplated in this first sentence of § 3313.201. The second sentence of § 3313.201 does authorize a school district to purchase UM coverage, but the Ohio legislature may only have intended for this second sentence to refer back to the limited types of policies described in the first sentence of § 3313.201, not to automobile insurance policies generally. Such an interpretation would mean that § 3313.201 does not expressly authorize school districts to purchase the UIM coverage for its employees driving their own automobiles outside the scope of their respective employment.

Regardless of the correct interpretation, we do not believe that a lack of express statutory authorization for a school district to provide UIM coverage for its employees

6. *See* OHIO REV.CODE ANN. §§ 9.83 (allowing a political subdivision to insure its officers and employees against liability arising from operating a motor vehicle while engaged in the course of their employment), 3327.09 (requiring a school district to "procure for the benefit of its employees who operate [any vehicle used to transport] school children motor vehicle liability insurance for injuries to persons and property.")

acting outside the scope of their employment defeats Plaintiff's claim. First of all, the issue of Ohio school districts' lack of authority would be Big Walnut's defense to Nationwide's enforcement of the contract; the lack of authority would not simply void the provisions. *See Allen v. Johnson,* 2002 WL 1453790, at *4 (Ohio App. 9th Dist. July 3, 2002); *Countrymark Coop., Inc. v. Smith,* 124 Ohio App.3d 159, 705 N.E.2d 738, 741 (1997) ("When challenging a contract's enforceability based on illegality, one does not challenge the terms to the agreement.... Where the performance of a contract violates a statute or act, public policy may prevent the *enforcement* of its obligations.") (emphasis added).

The authority on which Nationwide relies does not support its assertion that a school district (or third party beneficiary, such as Plaintiff) cannot enforce a contract's terms merely because the school district exceeded its statutory authority in obtaining such terms. Rather, these cases hold that a school district is not obligated to perform on a contract where it was not authorized to enter into the contract in the first place. *See Wolf,* 556 N.E.2d at 513 (refusing to enforce contract against a school board where a school principal had sought to bind the board but lacked the authority to do so); *Empire Gas Corp. v. Westerville Bd. of Educ.,* 102 Ohio App.3d 613, 657 N.E.2d 790, 794 (1995) (refusing to compel a city school board to perform on a contract with a propane gas supplier because the contract violated a statutory requirement that a fiscal certificate be attached to that contract). None of the cases Nationwide cites involve a situation where a school board was attempting to enforce a contract and was estopped from doing so because it was not authorized to enter into the contract in the first place. This is the appropriately analogous situation because Plaintiff (as a third party beneficiary to the contract) seeks to step into the school board's shoes in enforcing the contract. We are not persuaded that the propriety or impropriety of the school district's conduct excuses Nationwide, as a matter of law, from performing its obligations with respect to the Nationwide policy.

Moreover, all of Ohio's courts of appeals that have considered this argument have rejected it. *Stubbins,* 2003 WL 21500198, at *2–3; *Gates,* 2003 WL 1795595, at *1; *Westfield Ins. Co.,* 2002 WL 32098117, at *9; *Roberts,* 778 N.E.2d at 601–02; *Allen,* 2002 WL 1453790, at *4; *Mizen,* 770 N.E.2d at 101.

We are aware that this circuit recently accepted the position Nationwide here asserts in denying UIM coverage to an employee. *See Nationwide Agribusiness Ins. Co. v. Roshong,* No. 01–4009, 2002 WL 31007865, 47 Fed.Appx. 273 (6th Cir. Sept. 5, 2002). In a split panel decision, the *Roshong* majority concluded in an unpublished opinion that a school district lacks the statutory authority to purchase UM/UIM coverage for employees acting outside the scope of their duties, and that the UM/UIM provisions in the insurance contract in question were therefore void. *Id.* at *3–5. However, several of Ohio's courts of appeals have expressly rejected *Roshong.* *See Stubbins,* 2003 WL 21500198, at *2–3; *Gates,* 2003 WL 1795595, at *4; *Congrove v. Wausau Ins. Cos.,* No. 02CA8, 2003 WL 928485, at *5 n. 4 (Ohio App. 4th Dist. Feb. 18, 2003); *Westfield Ins. Co.,* 2002 WL 32098117, at *6. As previously mentioned, our task as a Court sitting in diversity is to apply the law of the forum state, which requires us "to predict what the Ohio Supreme Court would do if confronted with the same question." *Himmel v. Ford Motor Co.,* 342 F.3d 593, 598 (6th Cir.2003). When, as here, the Ohio Supreme Court has not decided the question that is presented, we

must ascertain the state law from "all relevant data." *Bailey v. V & O Press Co., Inc.,* 770 F.2d 601, 604 (6th Cir.1985). "Relevant data includes intermediate appellate decisions, which may not be disregarded unless we are convinced by other persuasive data that the highest court of the state would decide otherwise." *Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir.2003) (internal quotation marks and alterations omitted). Although *Roshong*'s reasoning may be compelling, it has failed to persuade the Ohio courts, and we must therefore reject it as well. Consequently, Nationwide's reliance on Big Walnut's apparent lack of statutory authority to purchase UM/UIM coverage for its employees acting outside the scope of their employment fails to dissuade us from our belief that *Scott–Pontzer* applies in the present case.

We therefore conclude that Steven Morgenstern was an "insured" under the Nationwide policy. We next consider whether Steven nevertheless was excluded from UIM coverage based on the Nationwide policy's exclusion language.

### C. Steven Morgenstern is Excluded from Coverage Under the Nationwide Policy Based Upon the "Other–Owned Auto" Exclusion.

▮ Nationwide also argues that even if *Scott–Pontzer* properly applies to the Nationwide policy, Plaintiff still may not recover the proceeds of the UIM coverage therein due to the policy's "other-owned auto" exclusion. Specifically, Nationwide asserts, this exclusion language conclusively proves that Plaintiff is not entitled to recover the proceeds because (1) Steven Morgenstern was a family member of "you" (with "you" being Plaintiff), (2) he was occupying his own motorcycle at the time of the accident, and (3) his motorcycle was not a "covered 'auto'" under the Nationwide policy.

We agree with Nationwide that this "other-owned auto" exclusion operates to exclude Steven Morgenstern from UIM coverage under the Nationwide policy. It is not disputed that Steven was a "family member" who sustained a "bodily injury" while "occupying" a vehicle owned by him. Furthermore, the Nationwide policy's definitions seem to make clear that Steven's motorcycle was not a "[c]overed 'Auto' for uninsured Motorist Coverage." A "covered 'auto'" is defined as "[o]wned 'autos' only," which in turn is defined as "[o]nly those 'autos' you own." (J.A. at 205.) According to the Nationwide policy, "you" means the "Named Insured," (*id.*) which is listed as Big Walnut. As was discussed above, *Scott–Pontzer* extended the definition of "you" to include employees; thus, Plaintiff (as a Big Walnut employee) is also a "you." However, Steven Morgenstern was not a "you"; he was a "family member" of "you." Therefore, the vehicle he owned was not a "covered 'auto.'" Thus, although Steven Morgenstern was an "insured" as a "family member" of "you," the "other-owned auto" provision excludes him from coverage under the Nationwide policy because he was a "family member" who "occup[ied]" his own vehicle at the time of the automobile collision.

Plaintiff suggests that the "other-owned auto" exclusion is ambiguous as a matter of law and therefore should not be enforced. We disagree. An ambiguity arises only when more than one reasonable interpretation explains the policy language. *See Scott–Pontzer,* 710 N.E.2d at 1119; *State ex rel. Petro v. R.J. Reynolds Tobacco Co.,* 152 Ohio App.3d 345, 787 N.E.2d 717, 723 (2003) (citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.,* 52 Ohio St.3d 174, 556 N.E.2d 1186 (1990), *syllabus*). Plaintiff

has not offered any alternative interpretation of the Nationwide policy's exclusion language that would operate *not* to exclude Steven Morgenstern from collecting UM/UIM coverage. Instead, she contends that Nationwide is erroneously trying to convert her into a "named Insured" on the Nationwide policy and is trying to "have it both ways." (Plaintiff's Br. at 22.) Although *Scott–Pontzer* did not convert an employee into a "Named Insured," it did find that an employee was an "insured" because the policy could reasonably be interpreted to mean that "you" includes employees. Under any reasonable interpretation, Steven Morgenstern was not a "you," but rather a family member driving his own vehicle that was not a "covered 'auto'." Therefore, the unambiguous terms of the Nationwide policy exclude Steven from coverage thereunder.[7]

Ohio's courts of appeals have thus far agreed with our interpretation. *See De Uzhca v. Derham,* No. 19106, 2002 WL 506808, at *4 (Ohio App.2d Dist. Apr. 5, 2002) (declining to include employee's husband as a "you" in the policy, which would have shielded him from the policy's "other-owned auto" exclusion, and affirming judgment for insurer); *Geren v. Westfield Ins. Co.,* No. L–01–1398, 2002 WL 360714, at *4 (Ohio App. 6th Dist. Mar. 8, 2002).[8] Therefore, the Ohio Supreme Court likely would find the language of the "other-owned auto" exclusion to be unambiguous.

Plaintiff next argues that the Ohio Supreme Court, through *Scott–Pontzer* and its progeny, has consistently held *sub silentio* the "other-owned auto" exclusion to be unenforceable, by consistently upholding coverage for employees notwithstanding the "other-owned auto" exclusions in those policies. For support she cites generally *Scott–Pontzer,* 710 N.E.2d 1116, as well as *Ezawa,* 715 N.E.2d at 1142 (summarily reversing judgment of court of appeals on authority of *Scott–Pontzer*); *Estate of Dillard v. Liberty Mut. Ins. Co.,* 86 Ohio St.3d 316, 715 N.E.2d 126 (1999) (same); *Bagnoli v. Northbrook Property & Cas. Ins. Co.,* 86 Ohio St.3d 314, 715

---

**7.** We recognize that some of Ohio's courts of appeals have declined to apply "other-owned auto" exclusions, instead holding that because the employee was not a "named insured" within the meaning of the insurance contract or *Scott–Pontzer,* the exclusion amounted to an ambiguity necessitating an interpretation against the drafter and in favor of the insured. *See Reppl v. Jones,* C.A. No. 21299, 2003 WL 21041231, at *4–5 (Ohio Ct.App. 9th Dist. May 7, 2003); *Giles v. Simonds,* No. 02–CO–18, 2003 WL 1464769, at *4–5 (Ohio Ct.App. 7th Dist. Mar. 20, 2003); *Kasson v. Goodman,* No. L–01–1432, 2002 WL 1800997, at *4–5 (Ohio Ct.App. 6th Dist. June 7, 2002); *Purvis v. Cincinnati Ins. Co.,* No.2001–CA–104, 2002 WL 538926, at *4–5 (Ohio Ct.App.2d Dist. Apr. 12, 2002), *rev'd on other grounds,* 98 Ohio St.3d 1494, 785 N.E.2d 475 (2003). However, those cases involved a different "other-owned auto" exclusion, namely, one excluding an insured from coverage if "the 'insured' is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured."

*Kasson,* 2002 WL 1800997, at *4. This exclusion would operate to exclude from coverage employees injured while driving their own vehicles if those employees were deemed "named insureds" pursuant to *Scott–Pontzer.* Reasoning that *Scott–Pontzer* merely deemed employees to be "insureds," not "named insureds," these courts declined to apply the exclusion. *See, e.g., id.* at *4–5. As discussed above, we agree that Plaintiff in the present case is not a "named insured." However, we are considering a different "other-owned auto" exclusion in this case, and any reasonable interpretation of it excludes Steven Morgenstern from UIM coverage under the Nationwide policy.

**8.** Again, we recognize that the Ohio Supreme Court has granted leave to appeal in the *De Uzhca* and *Geren* cases. *See* footnote 3, *supra.* Nevertheless, based on our interpretation of the "other-owned auto" exclusion in the Nationwide policy, we believe that the Ohio Supreme Court is likely to affirm *De Uzhca.*

N.E.2d 125 (1999) (same); *Headley,* 711 N.E.2d at 679 (same). We are not persuaded.

In 1994, the Ohio Supreme Court held that "other-owned auto" exclusions were unenforceable because they barred coverage which was required by Ohio Revised Code § 3937.18. *See Martin v. Midwestern Group Ins. Co.,* 70 Ohio St.3d 478, 639 N.E.2d 438 (1994). The holding effectively required insurers to "provide coverage under one uninsured motorist policy for all vehicles and resident family members of a household." *Baughman v. State Farm Mut. Auto. Ins. Co.,* 88 Ohio St.3d 480, 727 N.E.2d 1265, 1268 (2000) (describing *Martin*'s holding). However, the Ohio legislature then amended § 3937.18 to provide, once again, for the enforceability of such exclusions, effectively superseding *Martin.* The amendments were made effective on September 3, 1997. *See* Am. Sub. H.B. No. 261; Ohio Rev.Code Ann. § 3937.18(J)(1); *see also Baughman,* 727 N.E.2d at 1270 (describing the effect of H.B. 261). Thus, automobile insurance policies issued prior to September 3, 1997 are subject to the ban on "other-owned auto" exclusions, as articulated in *Martin,* but policies issued after September 3, 1997 are not. *See Ross v. Farmer's Ins. Group of Cos.,* 82 Ohio St.3d 281, 695 N.E.2d 732 (1998), *(syllabus)* ("For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.").

*Scott–Pontzer* and its progeny are silent on the issue, and their holdings do not manifest any implied disapproval of the "other-owned auto" exclusion, because the automobile accidents in all but one of the cases occurred (and therefore the policies were all issued) before September 3, 1997.[9] And although the relevant dates in *Ezawa* are unclear, the facts demonstrate that the injured party, a "family member" of the employee, was occupying an automobile that he did *not* own. Therefore, the "other-owned auto" exclusion would never have been at issue. *Ezawa,* 715 N.E.2d at 1142. The present case, by contrast, shows that the Nationwide policy was issued on February 1, 1999, after the effective dates of the amendments. Therefore, the Nationwide policy's "other-owned auto" exclusion is permitted under Ohio Revised Code § 3937.18(J)(1).

Plaintiff cites several other cases supporting her view that the "other-owned auto" exclusion does not apply in *Scott–Pontzer* cases, but these cases are not on point. For instance, in *Roberts,* 778 N.E.2d at 601, the relevant policy was issued before the amendment to Ohio Revised Code § 3937.18 took effect, and it therefore was subject to *Martin*'s invalidation of the "other-owned auto" exclusion.

Other cases are inapposite because the "other-owned auto" exclusion did not apply under the facts of those cases. For instance, in *Headley v. Grange Guardian Insurance Co.,* No. 01–CA–130, 2003 WL 40745 (Ohio App. 7th Dist. Jan. 6, 2003), the insurer pointed to its "other-owned

**9.** *See Bagnoli v. Northbrook Property & Cas. Ins. Co.,* No. 97 CA 00415, 1998 WL 518530, at *1 (Ohio Ct.App. 5th Dist. Apr. 27, 1998) (accident occurred in 1995), *rev'd,* 86 Ohio St.3d 314, 715 N.E.2d 125; *Headley v. Ohio Gov't Risk Mgmt. Plan,* 1998 WL 346863, at *1 (accident occurred in 1995), *rev'd,* 86 Ohio St.3d 64, 711 N.E.2d 679; *Estate of Dillard v.* *Liberty Mut. Ins. Co.,* No.1999 CA 00161, 1999 WL 34707, at *1 (Ohio Ct.App. 5th Dist. Jan. 11, 1999) (lawsuit pertaining to accident commenced on January 27, 1997), *rev'd,* 86 Ohio St.3d 316, 715 N.E.2d 126; *Scott–Pontzer,* 710 N.E.2d at 1117 (accident occurred in 1994).

auto" exclusion to support excluding plaintiff from coverage. *Id.* at *4. The court determined that, pursuant to *Scott–Pontzer*, the plaintiff, as an employee of the named insured, was a "you" under the policy, and therefore, because the plaintiff was driving a "covered 'auto' ", the exclusion did not apply. *Id.* at *4–5; *see also Batteiger v. Allstate Ins. Co.*, No.2001 CA 37, 2002 WL 242513, at *3 (Ohio App.2d Dist. Feb. 15, 2002) (holding that the "other-owned auto" exclusion did not apply because the injured family member did not own the vehicle she was occupying). And *Carmona v. Blankenship*, No. 02AP–14, 2002 WL 31111839 (Ohio App. 10th Dist. Sept. 24, 2002) declined to apply the "other-owned auto" exclusion but for an entirely different reason: it found that the insurer had failed to make a proper offer of UM coverage as was required at the time by *Linko v. Indemnity Insurance Co. of North America*, 90 Ohio St.3d 445, 739 N.E.2d 338 (2000), *superseded by statute as stated in Dolly v. Old Republic Ins. Co.*, 200 F.Supp.2d 823 (N.D.Ohio 2002).

None of the cases upon which Plaintiff seeks to rely involve a situation where (1) the relevant automobile insurance policy was issued before the amendment to Ohio Revised Code § 3937.18 took effect and (2) an employee's family member was injured while occupying his or her own vehicle which was not a "covered 'auto.' " Because the cases are all factually distinguishable, Plaintiff cannot properly rely on any of them.

We therefore conclude that although Steven Morgenstern was an "insured" under the Nationwide policy, he was excluded from coverage based upon the Nationwide policy's "other-owned auto" exclusion.

## V. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order granting summary judgment in favor of Plaintiff, and **REMAND** the case with instructions to grant summary judgment in favor of Nationwide.