[Cite as *State v. Smith*, 2014-Ohio-5303.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

      Plaintiff-Appellant,               :              No. 14AP-154
                                      (C.P.C. No. 12CR-5477)
v.                                                 :              No. 14AP-155
                                      (C.P.C. No. 12CR-3898)
Thomas C. Smith,                                   :

                                          (REGULAR CALENDAR)
      Defendant-Appellee.               :

---

D E C I S I O N

Rendered on November 28, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for
appellant.

*Joseph R. Landusky, II*, for appellee.

---

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1}   Plaintiff-appellant, State of Ohio ("the state"), appeals from a judgment of the Franklin County Court of Common Pleas granting a motion to dismiss the charges and indictments against defendant-appellee, Thomas C. Smith ("appellee"). Because we conclude that, at the times relevant to the indictments, Ohio law did not clearly define the acts alleged in the indictments to be criminal offenses, we affirm.

{¶ 2}   Appellee operates several shops in Columbus, Ohio, which are involved in the sale of products that might be referred to as "adult novelties." In August and October of 2012, appellee was indicted on multiple criminal charges related to the sale of certain products at those shops. In common pleas case No. 12CR-3898, filed in August 2012, appellee was indicted on two counts of "trafficking in spice," with the charges asserting that, on or about February 8, 2012, appellee knowingly sold or offered to sell "a controlled substance included in Schedule I, to wit: AM 2201, which is an analog controlled

substance as defined in section 3719.01 of the Ohio Revised Code, as defined in section 2925.01 of the Ohio Revised Code." The indictment in 12CR-3898 also charged appellee with three counts of aggravated trafficking in drugs, asserting that on or about February 8 and May 2, 2012, he knowingly sold or offered to sell "a controlled substance included in Schedule I, to wit: a-PVP, which is an analog controlled substance as defined in section 3719.01 of the Ohio Revised Code, as defined in section 2925.01 of the Ohio Revised Code." In October 2012, appellee was indicted in common pleas case No. 12CR-5477 on five counts of aggravated possession of drugs and five counts of aggravated trafficking in drugs. These charges alleged that, on or about May 2 and July 25, 2012, appellee knowingly possessed or distributed "a controlled substance included in Schedule I, to wit: a-PVP which is a controlled substance analog, as defined in section 3719.01 of the Ohio Revised Code, commonly known as Bath Salts."

{¶ 3} Appellee moved to dismiss the indictments and charges in both cases, asserting that, at the times relevant to the indictments, sale or possession of a controlled substance analog were not defined as criminal offenses under Ohio law. Following a hearing, the trial court found that, at the time of appellee's alleged acts, the statutory definition of controlled substance analog was not incorporated into criminal law, effectively concluding that possession or sale of controlled substance analogs were not criminal offenses. The trial court entered a judgment granting appellee's motion to dismiss the indictments and charges against him.

{¶ 4} The state appeals from the trial court's judgment, assigning one error for this court's review:

> THE TRIAL COURT ERRED IN GRANTING THE MOTION TO DISMISS WHEN THE STATUTORY SCHEME IN EXISTENCE AT THE TIME OF THE OFFENSES PROHIBITED TRAFFICKING AND POSSESSION OF SCHEDULE I SUBSTANCES THAT WERE CONTROLLED SUBSTANCE ANALOGS.

**Standard of Review**

{¶ 5} We review de novo a trial court's legal conclusions in granting a motion to dismiss criminal charges. *State v. Wilson*, 10th Dist. No. 13AP-205, 2013-Ohio-4799, ¶ 4; *State v. Walker*, 10th Dist. No. 06AP-810, 2007-Ohio-4666, ¶ 9. At issue in this appeal is

whether Ohio law defined possession or sale of a controlled substance analog as a criminal offense during the period from February through July of 2012 when appellee is alleged to have possessed and sold compounds referred to as AM 2201 and a-PVP. In granting the motion to dismiss, the trial court concluded that, at the relevant times, the law did not define these acts as criminal offenses. "When an appellate court is called on to review a trial court's interpretation and application of a statute, the 'appellate court conducts a de novo review, without deference to the trial court's determination.' " *State v. Willig*, 10th Dist. No. 09AP-925, 2010-Ohio-2560, ¶ 14 (citations omitted).

**Regulation of "Controlled Substance Analog" Chemicals or Compounds**

{¶ 6}  In 1986, the United States Congress acted to address the problem of "underground chemists who tinker with the molecular structure of controlled substances to create new drugs that are not [classified as] scheduled [controlled substances]" by enacting the Controlled Substance Analogue Enforcement Act of 1986 as part of the Anti-Drug Abuse Act of 1986. *United States v. Forbes*, 806 F.Supp. 232, 236 (D.Colo.1992). *See United States v. Klecker*, 348 F.3d 69, 70 (4th Cir.2003) ("Congress enacted the Analogue Act to prevent underground chemists from altering illegal drugs in order to create new drugs that are similar to their precursors in effect but are not subject to the restrictions imposed on controlled substances.") *See also* Anti-Drug Abuse Act of 1986, Subtitle E–Controlled Substance Analogue Enforcement Act of 1986, P.L. 99-570. As part of that act, Congress created a definition of "controlled substance analogue."[1] 21 U.S.C. 802(32). Congress further provided that, for purposes of federal law, a "controlled substance analogue" shall be treated as a controlled substance in schedule I. 21 U.S.C. 813.

{¶ 7}  The Ohio General Assembly enacted a similar measure, Substitute House Bill 64 ("House Bill 64"), in 2011. 2011 Sub.H.B. No. 64. Under that legislation, the General Assembly created a definition of "controlled substance analog" in R.C. 3719.01(HH).  The legislation provided that "[a] controlled substance analog, to the extent intended for human consumption, shall be treated for purposes of any provision of the

---

[1] We note here a minor difference in the spelling of one of the key terms relevant to this decision. Federal law refers to a chemical substance "analogue," while the Revised Code refers to a chemical substance "analog." For purposes of this decision, we will employ the same spelling chosen by each legislative body-i.e., "analogue" when referring to federal law and "analog" when referring to the Revised Code.

Revised Code as a controlled substance in schedule I." 2011 Sub.H.B. No. 64. The legislation also made certain changes that will be discussed more fully below to R.C. 2925.03 and 2925.11, related to the possession and sale of certain chemicals referred to as "spice." The amendments and new statutes enacted under House Bill 64 became effective on October 17, 2011. The General Assembly subsequently passed additional legislation in 2012 amending many of the sections of law relevant to this appeal, but those amendments became effective on December 20, 2012. 2012 Sub.H.B. No. 334. Therefore, at the time of the alleged acts giving rise to the charges against appellee, the law as amended by House Bill 64 controlled.

**Application of R.C. 2925.03 and 2925.11 Following Enactment of House Bill 64**

{¶ 8}   As the Supreme Court of Ohio has recognized, "all conduct is innocent unless there is a statute that criminalizes it." *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, ¶ 8. In order for an act to constitute a crime under Ohio law, it must be defined as an offense in the Ohio Revised Code. R.C. 2901.03(A). "An offense is defined when one or more sections of the Revised Code state a positive prohibition or enjoin a specific duty, and provide a penalty for violation of such prohibition or failure to meet such duty." R.C. 2901.03(B). *See also State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, ¶ 10 ("In Ohio, all criminal offenses are statutory, and the elements necessary to constitute a crime must be gathered wholly from the statute."). Accordingly, we must determine whether, at the times relative to this appeal, the law contained a positive prohibition on the possession or sale of "controlled substance analogs" and provided a penalty for violating that prohibition.

{¶ 9}   Courts apply the "rule of lenity" when faced with ambiguity in a criminal statute. *See State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 10 ("This canon of strict construction, also known as the rule of lenity, is codified in R.C. 2901.04(A), which provides that sections of the Revised Code that define offenses or penalties 'shall be strictly construed against the state, and liberally construed in favor of the accused.' "). "Under the rule [of lenity], ambiguity in a criminal statute is construed strictly so as to apply the statute only to conduct that is *clearly* proscribed." (Emphasis added.) *Id. See*

*also Columbus v. DeLong*, 173 Ohio St. 81, 83 (1962) ("[P]enal statutes or ordinances are to be interpreted strictly against the state or a municipality and liberally in favor of an accused.").

{¶ 10} The state argues that possession and sale of controlled substance analogs were prohibited at the time of appellee's alleged acts because the law contained a definition of "controlled substance analog" and provided that, "for purposes of any provision of the Revised Code," a controlled substance analog would be treated as a schedule I controlled substance. *See* R.C. 3719.01(HH) and 3719.013 (2012). The state further asserts that House Bill 64 demonstrates clear legislative intent to prohibit and penalize possession and sale of controlled substance analogs.

{¶ 11} Between the two criminal cases, appellee was charged with eight counts of aggravated trafficking in drugs in violation of R.C. 2925.03 and five counts of aggravated possession of drugs in violation of R.C. 2925.11. The caption of the indictment in case No. 12CR-3898 indicates that appellant was also charged with two counts of "trafficking in spice" in violation of R.C. 2925.03. This will be discussed more fully below. With respect to the charges of aggravated trafficking in drugs, at the times relevant to this appeal, R.C. 2925.03 prohibited "sell[ing] or offer[ing] to sell a controlled substance." R.C. 2925.03(A)(1) (2012). The law also prohibited "prepar[ing] for shipment, ship[ping], transport[ing], deliver[ing], prepar[ing] for distribution, or distribut[ing] a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2) (2012). With respect to the charges of aggravated possession of drugs, at the times relevant to this appeal, the law provided that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A) (2012).

{¶ 12} At the time of these alleged acts, Chapter 2925 of the Revised Code, governing criminal drug offenses, defined certain terms by incorporating the definitions contained in Chapter 3719 of the Revised Code:

> As used in this chapter:
>
> (A) "Administer," "controlled substance," "dispense," "distribute," "hypodermic," "manufacturer," "official written

order," "person," "pharmacist," "pharmacy," "sale," "schedule I," "schedule II," "schedule III," "schedule IV," "schedule V," and "wholesaler" have the same meanings as in section 3719.01 of the Revised Code.

(B) "Drug dependent person" and "drug of abuse" have the same meanings as in section 3719.011 of the Revised Code.

* * *

(AA) "Marihuana" has the same meaning as in section 3719.01 of the Revised Code, except that it does not include hashish.

R.C. 2925.01 (2012). Notably, the list of definitions contained in R.C. 2925.01(A) at the time did not expressly incorporate the definition of "controlled substance analog" created in House Bill 64 and codified as R.C. 3719.01(HH). "The canon [of statutory construction] expressio unius est exlusio alterius tells us that the express inclusion of one thing implies the exclusion of the other." *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 24. Thus, arguably, by creating a definition of "controlled substance analog" in R.C. 3719.01(HH) under House Bill 64 but failing to incorporate that definition into R.C. 2925.01, the General Assembly *excluded* that definition from applying in the context of the criminal drug offense statutes. *See, e.g., Hoops v. United Telephone Co. of Ohio*, 50 Ohio St.3d 97, 101 (1990) ("The General Assembly is presumed to have known that its designation of a remedy would be construed to exclude other remedies, consistent with the statutory construction maxim of *expressio unius est exclusion alterius*."). R.C. 3719.01 expressly states that the definitions contained therein, including the definition of "controlled substance analog" under R.C. 3719.01(HH) apply "[a]s used in this chapter"— i.e., Chapter 3719 of the Revised Code. *See, e.g., Morgenstern v. Nationwide Agribusiness Ins. Co.*, 78 Fed.Appx. 485, 491 (6th Cir.2003) ("Further indication that § 2744.01 is inapplicable is its express limitation of the definition of 'employee' to 'as used in this chapter.' "). Moreover, the preamble to House Bill 64 indicated that one of the purposes was "to define a 'controlled substance analog' for purposes of the Controlled Substances Law," suggesting that the definition created in the legislation was limited to that portion of the Revised Code. 2011 Sub.H.B. No. 64.

{¶ 13} The ambiguity under the law as amended by House Bill 64 is also demonstrated by comparing the treatment of controlled substance analogs with the treatment of certain chemical compounds referred to as "spice." Under House Bill 64, the General Assembly amended R.C. 2925.03 to provide that, if an individual sold certain specified chemical compounds, as defined in the law, the individual was guilty of "trafficking in spice." R.C. 2925.03(C)(8) (2012). The legislation likewise amended R.C. 2925.11 to provide that, if an individual possessed those specified chemical compounds, the individual was guilty of "possession of spice." R.C. 2925.11(C)(8) (2012). House Bill 64 also added those specified compounds to the list of schedule I drugs. R.C. 3719.41(C)(35)-(39) (2012). By contrast, the General Assembly did not amend R.C. 2925.03 or 2925.11 to expressly prohibit the sale or possession of controlled substance analogs and did not amend any part of Chapter 2925 to explicitly refer to controlled substance analogs and, as relevant to this case, AM 2201 and a-PVP.

{¶ 14} The state argues that R.C. 3719.013, providing that a controlled substance analog "shall be treated for purposes of any provision of the Revised Code as a controlled substance in schedule I," necessarily incorporated controlled substance analogs into all parts of the Revised Code addressing schedule I controlled substances, including R.C. 2925.01, 2925.03, and 2925.11. However, we note that Chapter 3719 generally relates to the civil regulation of controlled substances, not to criminal enforcement. *See, e.g.,* R.C. 3719.02 (providing for licensure as manufacturer of controlled substances), R.C. 3719.021 (providing for licensure as wholesaler of controlled substances), R.C. 3719.05 (providing rules for dispensation of controlled substances by pharmacists), and R.C. 3719.06 (providing rules for prescription of controlled substances by licensed health professionals). Moreover, at the relevant time, there were no cross-references or any other indicators in Chapter 2925 to provide notice that the treatment of controlled substance analogs under Chapter 3719 also applied to Chapter 2925. Also confusing is R.C. 3719.01(HH)(2)(a), which states that " 'controlled substance analog' does not include any of the following: (a) A controlled substance," seemingly contradicting R.C. 3719.013.

{¶ 15} As noted above, House Bill 64 was similar to the federal Controlled Substance Analogue Enforcement Act of 1986. However, the placement of the relevant provisions within the overall statutory structure also demonstrates a notable distinction

between the two measures. Under the Controlled Substance Analogue Enforcement Act of 1986, all of the relevant provisions, including the definition of "controlled substance analogue" and the requirement that such analogues be treated as controlled substances, were placed into the same portion of federal law that contained the prohibitions on possession and sale of controlled substances—i.e., Subchapter I ("Control and Enforcement") of Chapter 13 ("Drug Abuse Prevention and Control") of Title 21 ("Food and Drugs") of the United States Code. *See* 21 U.S.C. 802(32) (defining "controlled substance analogue"); 21 U.S.C. 813 (providing that controlled substance analogues shall be treated as controlled substances); and 21 U.S.C. 841(a)(1) (prohibiting the manufacture, distribution, or dispensation of controlled substances, or possession of controlled substances with intent to manufacture, distribute, or dispense). By contrast, House Bill 64 placed the controlled substance analog provisions in Chapter 3719 separate from the prohibitions and penalties set forth in Chapter 2925, and failed to incorporate any explicit cross-references in Chapter 2925 to the controlled substance analog provisions.

{¶ 16} Applying the rule of lenity, which requires us to construe ambiguity in criminal statutes strictly so as to apply only to conduct that is *clearly* proscribed, we conclude that, during the period from February through July of 2012, R.C. 2925.03 and 2925.11 did not adequately "state a positive prohibition * * * and provide a penalty for violation of such prohibition" on the sale or possession of controlled substance analogs. *See* R.C. 2901.03(B). Accordingly, the acts appellee is alleged to have committed were not clearly defined as criminal offenses under the law as it existed at the time. The trial court did not err by granting appellee's motion to dismiss the indictments against him.

**"Trafficking in Spice" Charges**

{¶ 17} The caption of the indictment against appellee in common pleas case No. 12CR-3898 indicates that he was charged with two counts of "trafficking in spice." As explained above, House Bill 64 amended R.C. 2925.03 to create the offense of "trafficking in spice." R.C. 2925.03(C)(8) (2012). Thus, the state argues that, even if the trial court correctly dismissed the charges against appellee for possession and sale of chemical substance analogs, the motion to dismiss should have been denied as to the two counts of trafficking in spice.

{¶ 18} The state did not argue before the trial court that Counts 1 and 2 of the indictment alleging trafficking in spice in the caption should be differentiated from Counts 3, 4, and 5 of the indictment. Rather, the state argued that trafficking in AM 2201 and a-PVP, as controlled substance analogs, was prohibited at the time of offense. The state also did not move to amend the indictment to conform to the body of Counts 1 and 2 of the indictment to the caption. Accordingly, the state has waived this argument.

{¶ 19} Nevertheless, we note that there is no dispute that trafficking in spice was clearly prohibited at the times relevant to this appeal. The prohibition on the sale of "spice" provided as follows:

> If the drug involved in the violation is 1-Pentyl-3-(1-naphthoyl)indole, 1-Butyl-3-(1-naphthoyl)indole, 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole, 5-(1,1-dimethyl-heptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol, or 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol or a compound, mixture, preparation, or substance containing 1-Pentyl-3-(1-naphthoyl)indole, 1-Butyl-3-(1-naphthoyl)indole, 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole, 5-(1,1-di-methylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol, or 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol, whoever violates division (A) of this section is guilty of trafficking in spice.

R.C. 2925.03(C)(8) (2012).

{¶ 20} Under this provision, the offense of trafficking in spice was limited to the sale of one of several explicitly defined chemicals or a compound, mixture, or substance containing one of those chemicals. Those chemicals constituting "spice" drugs were also contained in the list of schedule I controlled substances. R.C. 3719.41(C)(35)-(39) (2012).

{¶ 21} Although the caption of the indictment in case No. 12CR-3898 indicates that appellee was charged with two counts of trafficking in spice, as noted above, the body of the indictment alleges with respect to both counts that appellee sold or offered for sale "AM 2201, which is an analog controlled substance." Likewise, a laboratory report from the Bureau of Criminal Identification and Investigation contained in the record indicates that a tested sample contained 1-(5-fluoropentyl)-3-(1-naphthoyl)indole, parenthetically identified as AM 2201. The report further indicated that the AM 2201 sample had a

chemical structure that was "substantially similar" to 1-pentyl-3-(1-naphthoyl)indole. Thus, contrary to the caption of the indictment, appellant was not actually charged with selling or offering to sell one of the "spice" chemicals whose sale was prohibited under R.C. 2925.03(C)(8) but, rather, with selling or offering to sell an analog of one of those chemicals. Under the same reasoning set forth above, we conclude that, at the relevant time, the law did not clearly state a positive prohibition on the sale of analogs of the chemicals defined as part of the prohibition on trafficking in spice under R.C. 2925.03(C)(8). Therefore, the trial court did not err by granting appellee's motion to dismiss with respect to these two charges.

{¶ 22} For the foregoing reasons, we overrule the state's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.

————————————