[Cite as *State v. Mobarak*, 2016-Ohio-4632.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-162 |
| v. | : | (C.P.C. No. 13CR-532) |
| Ahmad Mobarak, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 28, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Stephen L. Taylor*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals a decision of the Franklin County Court of Common Pleas in which the trial court dismissed criminal charges against defendant-appellee, Ahmad Mobarak, on the grounds that the conduct underlying the charges was not criminal at the time Mobarak engaged in it. Because we have previously addressed this precise legal issue, and because the law is clear on the subject, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On February 1, 2013, Ahmad Mobarak was indicted for one count of aggravated trafficking in drugs and one count of aggravated possession of drugs for activity that allegedly occurred on August 15, 2012. Specifically, the indictment referenced a compound called MDPPP, allegedly a "[c]ontrolled substance analog" as defined in R.C. 3719.01. The State did not allege in the indictment that MDPPP was a controlled substance at the time but that it was analogous to a controlled substance.

{¶ 3}   Mobarak pled "not guilty" on February 8, 2013. (Feb. 8, 2013 Plea Form.) On May 11, 2014, Mobarak filed a motion to dismiss based in part on the argument that on August 15, 2012, it was not a criminal offense under Ohio law to possess or sell a "controlled substance analog." (May 11, 2014 Mot. to Dismiss at 1.)   The trial court granted the motion in an entry filed on March 3, 2016.

{¶ 4}   The State now timely appeals.

## II. ASSIGNMENT OF ERROR

{¶ 5}   The State assigns a single error for review:

> THE TRIAL COURT ERRED IN GRANTING THE MOTION TO DISMISS WHEN THE STATUTORY SCHEME IN EXISTENCE AT THE TIME OF THE OFFENSES PROHIBITED TRAFFICKING AND POSSESSION OF SCHEDULE I SUBSTANCES THAT WERE CONTROLLED SUBSTANCE ANALOGS.

## III.  DISCUSSION

{¶ 6}   Currently, the statutes that Mobarak was accused of violating prohibit the sale and possession of controlled substance analogs.   R.C. 2925.03(A) prohibits the following:

> (A) No person shall knowingly do any of the following:
>
> (1) Sell or offer to sell a controlled substance or a controlled substance analog;
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

(Emphasis added).  R.C. 2925.11(A) similarly provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance *or a* controlled *substance analog*.

(Emphasis added).  Current R.C. 2925.01(A) of R.C. Title 29 now adopts the definition of "controlled substance analog" that is and was previously defined in R.C. 3719.01(HH):

{¶ 7}   As used in this chapter:

> (A) "Administer," "controlled substance," *"controlled substance analog,"* "dispense," "distribute," "hypodermic," "manufacturer," "official written order," "person," "pharmacist," "pharmacy," "sale," "schedule I," "schedule II," "schedule III," "schedule IV," "schedule V," and "wholesaler" have the same meanings as in section 3719.01 of the Revised Code.

(Emphasis added.) R.C. 2925.01(A).

{¶ 8} However, the bill that added "controlled substance analog" phrasing to the three above-referenced sections of R.C. Title 29 was not enacted until December 26, 2012, *after* August 15, 2012 when Mobarak was alleged to have committed the offenses at issue. 2012 Am.Sub.H.B. No. 334.[1] In the preamble of the legislation, one of the stated purposes was "to *create* the offenses of trafficking in and possession of controlled substance analogs." (Emphasis added) *Id.*; *see also, e.g., GMC v. Wilkins*, 102 Ohio St.3d 33, 2004-Ohio-1869, ¶ 32; *Ohio State Bldg. & Constr. Trades Council v. Cuyahoga Cty. Bd. of Commrs.*, 98 Ohio St.3d 214, 2002-Ohio-7213, ¶ 1, 94; *Ritchey Produce Co. v. State Dept. of Admin. Servs.*, 85 Ohio St.3d 194, 260 (1999) (all considering stated legislative purpose in the preamble of an enactment). Although the term, "[c]ontrolled substance analog" was defined in R.C. Title 37, before December 26, 2012 nothing in the criminal title made it a crime to possess or sell controlled substance analogs.

{¶ 9} As the law existed in August 2012 (when Mobarak's illegal conduct was alleged to have occurred), R.C. Title 37 regulated the licensing and use of controlled substances. Within that title, R.C. 3719.01 set out over 40 definitions. Several of these were plainly inapplicable to R.C. Title 29, for example, "[c]ategory III license" and "[h]ospital." R.C. 3719.01(J) and (FF). Also included in those definitions was a definition of "[c]ontrolled substance analog." R.C. 3719.01(HH). The pre-December 2012 definition in R.C. 3719.01 of that term was (in general paraphrase) a substance substantially similar to a Schedule I or II substance which has or is intended to have a substantially similar or greater effect than a Schedule I or II substance. R.C. 3719.01(HH).

{¶ 10} However, the pre-December 2012 version of R.C. Title 29 had explicitly adopted only 17 of the more than 40 definitions in R.C. 3719.01:

---

[1] Reported at 2011 Ohio HB 334.

No. 16AP-162

> (A) "Administer," "controlled substance," "dispense," "distribute," "hypodermic," "manufacturer," "official written order," "person," "pharmacist," "pharmacy," "sale," "schedule I," "schedule II," "schedule III," "schedule IV," "schedule V," and "wholesaler" have the same meanings as in section 3719.01 of the Revised Code.

R.C. 2925.01(A) (pre December 2012). Notably absent from this list was the term, "controlled substance analog." Despite the fact that the health, safety, morals title (Title 37) of the Ohio Revised Code contained a definition of "controlled substance analog" in August 2012, the criminal title (Title 29) of the Ohio Revised Code did not contain, adopt or even reference a definition of "controlled substance analog," and it did not prohibit the possession or sale of a "controlled substance analog." *See, e.g.*, R.C. 2925.01 through 2925.58 (2012). The maxim of expressio unius est exclusio alterius,[2] and the rule of lenity, as set forth in R.C. 2901.04(A), are to be applied in this circumstance.

> The "rule of lenity" is a principle of statutory construction codified in R.C. 2901.04(A), which provides, in relevant part that: "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." Application of the rule of lenity prevents a court from interpreting a criminal statute so as to increase the penalty it imposes on an offender where the intended scope of the statute is ambiguous. *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, ¶ 38, citing *Moskal v. United States*, 498 U.S. 103, 107-08 (1990). Under the rule, ambiguity in criminal statutes "is construed strictly so as to apply the statute only to conduct that is clearly proscribed." *Id.* at ¶ 38, citing *United States v. Lanier*, 520 U.S. 259, 266 (1997).

*State v. Goins*, 10th Dist. No. 14AP-747, 2015-Ohio-3121, ¶ 46. Prior to December 2012, it was not a crime to possess or sell controlled substance analogs in Ohio, and therefore, we are constrained to find that Mobarak could not be charged with a crime that was defined as such after he allegedly committed the acts in question. *See State v. Mustafa*, 10th Dist. No. 15AP-465, 2015-Ohio-5370; *State v. Mobarak*, No. 14AP-517, 2015-Ohio-3007; *State*

---

[2] This legal maxim or principle of interpretation is that when particularized items are expressed, those that are not expressed are inferred to be excluded.

No. 16AP-162

*v. Mohammad*, 10th Dist. No. 14AP-662, 2015-Ohio-1234; *State v. Smith*, 10th Dist. No. 14AP-154, 2014-Ohio-5303.

{¶ 11} Contrary to this law, the State argues that the statutes prior to December 2012 were not ambiguous and did clearly prohibit the possession or sale of controlled substance analogs. The State primarily relies upon R.C. 3719.013 to support this argument since, even prior to December 2012, that statute provided that a controlled substance analog was to be treated, "for purposes of any provision of the Revised Code as a controlled substance in schedule I." R.C. 3719.013. Prior to December 2012, there did exist in the Ohio Revised Code an offense of possessing or selling a Schedule I controlled substance. Thus, the State argues that the language of R.C. 3719.013 supports its indictment against Mobarak for the offenses of possessing or selling a controlled substance analog prior to the enactment of versions of R.C. 2925.03(A) and R.C. 2925.11(A) containing the positive prohibition on possessing or selling "controlled substance analog[s]." (State Brief at 4-13.)

{¶ 12} This argument contravenes R.C. 2901.04, which requires strict reading of R.C. Title 29 in whatever iteration existed at the time of and subsequent to its codification. Before December 2012, R.C. Title 29 did not define Schedule I drugs for which criminal prosecution was permitted to include those drugs also listed in R.C. 3719.013. As it existed prior to December 2012, R.C. 2925.01(A) adopted the definition of "schedule I," as set forth "in section 3719.01 of the Revised Code," not as set forth in R.C. 3719.013 . R.C. 2925.01(A) (2012). At that time, R.C. 3719.01(BB) defined "[s]chedule I" as, "established pursuant to section 3719.41 of the Revised Code, as amended pursuant to section 3719.43 or 3719.44 of the Revised Code." R.C. 3719.01(BB) (2012). None of these statutes (R.C. 3719.41, 3719.43, or 3719.44), as they existed in August 2012, included controlled substance analogs within Schedule I, and none of these statutes as they existed in August 2012, referenced a modification to the definition of Schedule I set forth in R.C. 3719.013. R.C. 3719.41 (2012); R.C. 3719.43 (2012); R.C. 3719.44 (2012); *see also* R.C. 2925.01 through 2925.58 (2012). A required, strict reading of the plain language of the statutes prevents us from inferring otherwise. Further, even if R.C. 3719.013's inclusion of the words "any purpose" were to be understood to be an attempted modification of the criminal title prior to December of 2012, it at best would be ambiguous.

{¶ 13} Despite this, the State contends that the law prior to 2012 was unambiguous in prohibiting the possession and sale of controlled substance analogs and, therefore, not in need of interpretation or construction. We reiterate our previous holding in *Mobarak* that a number of ambiguities led to the conclusion that the law prior to 2012 did not clearly prohibit the possession or sale of controlled substance analogs. In *Mobarak*[3] we reasoned:

> We noted the following ambiguities existed in the criminal statutes: (1) by failing to incorporate the definition of "controlled substance analog" in R.C. 3719.01(HH) into R.C. 2925.01, while specifically incorporating other definitions of terms from R.C. Chapter 3719, the General Assembly excluded that definition from applying in the context of the criminal drug offense statutes; (2) R.C. 3719.01 expressly limits the definitions contained therein, including the definition of "controlled substance analog" under R.C. 3719.01(HH), to "[a]s used in this chapter"—i.e., Chapter 3719 of the Revised Code; (3) the preamble to H.B. No. 64 indicated that one of its purposes was "to define a 'controlled substance analog' for purposes of the Controlled Substances Law," suggesting that the definition created in the legislation was limited to that portion of the Revised Code and did not extend to the criminal drug offense statutes. H.B. No. 64; (4) R.C. Chapter 3719 generally relates to the civil regulation of controlled substances, not to criminal enforcement, and there were no cross-references or any other indicators in R.C. Chapter 2925 to provide notice that the treatment of controlled substance analogs under R.C. Chapter 3719 also applied to R.C. 2925; (5) R.C. 3719.01(HH)(2)(a) states that "controlled substance analog" does not include "[a] controlled substance," which seemingly contradicts R.C. 3719.013; and (6) unlike the federal Controlled Substance Analogue Enforcement Act of 1986, in which all of the relevant provisions were placed into the same portion of federal law that contained the prohibitions on possession and sale of controlled substances, H.B. No. 64 placed the controlled substance analog provisions in R.C. Chapter 3719, separate from the prohibitions and penalties set forth in R.C. Chapter 2925, and failed to incorporate any explicit cross-references in R.C. Chapter 2925 to the controlled substance analog provisions. Applying the rule of lenity, which requires the court to construe ambiguity in criminal statutes strictly so as to apply only to conduct that

---

[3] Not the same defendant as in this case.

No. 16AP-162

> is clearly proscribed, we concluded in *Smith* that, during the period from February through July 2012 when the defendant was alleged to have possessed and sold A-PVP, R.C. 2925.03 and 2925.11 did not adequately state a positive prohibition and provide a penalty for violation of such prohibition on the sale or possession of controlled substance analogs. Therefore, we found the acts defendant was alleged to have committed in *Smith* were not clearly defined as criminal offenses under the law as it existed at the time.

*Mobarak* at ¶ 7.

{¶ 14} In short, the Revised Code edition that existed prior to December 2012, though it did define "controlled substance analog," did not make it a crime to possess or sell controlled substance analogs. Though our reasoning stands on its own based on the law as it existed prior to December 2012, one clear confirmation of the reliability of our reasoning is that, when the legislature drafted House Bill No. 334 (which was ultimately enacted on December 26, 2012) it explained that the bill's purpose was "to *create* the offenses of trafficking in and possession of controlled substance analogs." (Emphasis added.) 2012 Am.Sub.H.B. No. 334.

{¶ 15} The State notes that the Twelfth District Court of Appeals has now decided *State v. Shalash*, 12th Dist. No. CA2014-12-146, 2015-Ohio-3836, which diverted from the holdings of *Smith* and its progeny. In considering the State's arguments we also consider that, in addition to factors already discussed, in *Smith*, there was a potential vagueness problem. That is, in *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), the United States Supreme Court explained that one requirement for the constitutionality of a penal statute is that it must define an offense with sufficient definiteness to enable ordinary people to understand what conduct is prohibited. S*ee also Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

{¶ 16} In *Smith*, the Franklin County Sheriff's Office had conducted the investigation that led to the charges against the defendant. Yet, the defendant's motions to dismiss made clear (and the fact was not disputed by the State), that the Columbus Police Department had also investigated the same conduct of the defendant and had reached a different conclusion, that the materials sold by the defendant's stores were not illegal prior to December 2012. Thus, prior to the legislature's enactment "to *create* the offenses of trafficking in and possession of controlled substance analogs" in December

No. 16AP-162

2012, the Franklin County Sheriff's Office and the Columbus Police Department had reached diametrically opposite conclusions on whether it was criminal to sell what was not clearly defined under R.C. Title 29 as "controlled substance analogs" until December 2012. (Emphasis added.) 2012 Am.Sub.H.B. No. 334. Moreover, the Ohio Legislature, by acting to "create the offense" rather than "clarify" or "modify" the offense in 2012, also expressed the view that prior to December 2012, it was not a criminal offense to possess or sell controlled substance analogs. 2012 Am.Sub.H.B. No. 334. Had we decided *Smith* differently and somehow held that the definitions in R.C. Title 37 created criminal liability, there would have been serious question as to how "ordinary people" could have understood what conduct was prohibited, especially when two law enforcement agencies for the same general geographical area in the State of Ohio reached different interpretations in applying the same statutes in whether or not to charge an individual with a crime. *Kolender* at 357. The evidence that there existed two diametrically differing interpretations by competent law enforcement agencies in overlapping political subdivisions strengthened our conclusion that it was not a crime until after the enactment of 2012 Am.Sub.H.B. No. 334.

{¶ 17} Additionally, the Twelfth District Court of Appeals simply held without explanation that the law prior to 2012 unambiguously made it a crime to possess and sell controlled substance analogs and that, therefore, no construction or interpretation was needed. *Shalash* at ¶ 23-28. With due respect, this analysis put the proverbial cart before the horse. More analysis was needed, at the very least to explain how under R.C. 2901.04 it conducted a strict construction analysis of the laws applied to charge Shalash with a crime and how it liberally construed the laws in favor of Shalash as the accused.

{¶ 18} The Twelfth District Court of Appeals in *Shalash* also did not explore or reason why the numerous ambiguities we have noted in our prior decisions comparing the "before" and "after" statutory schemes are in error. *Id.* For example, although the *Shalash* court quoted R.C. 3719.013 as purporting to define controlled substance analogs as Schedule I substances for the purposes of "any provision of the Revised Code," the court in that district did not discuss how this language could be squared with how "Schedule I" as defined at that time referenced only R.C. 3719.01, 3719.41, 3719.43, and 3719.44(as all defining the contents of "Schedule I") but did not mention R.C. 3719.013. Nor did the

court in *Shalash* address the fact that R.C. 3719.013, which purported to place controlled substance analogs on Schedule I, potentially conflicted with R.C. 3719.01(HH)(2)(a), which plainly provided that "[c]ontrolled substance analog" does not include "[a] controlled substance." The court in *Shalash* also did not discuss the ambiguity between R.C. 3719.013's any purposes language and the fact that "R.C. 3719.01 expressly limits the definitions contained therein, including the definition of 'controlled substance analog' under R.C. 3719.01(HH), to '[a]s used in this chapter'—i.e., Chapter 3719 of the Revised Code." *See Mobarak* at ¶ 7. Finally, the *Shalash* court did not discuss how it could already be a crime to possess or traffic in controlled substance analogs when the legislature (long before *Smith* first drew attention to the clarity issues of the statutory scheme then in existence) thereafter acted to "*create* the offenses of trafficking in and possession of controlled substance analogs." (Emphasis added.) 2012 Am.Sub.H.B. No. 334.

{¶ 19} When a statute instructs us on how the legislature requires certain laws to be interpreted, we must follow such interpretive laws. We cannot choose our own method of statutory construction of whether a statute prescribes criminal offenses or penalties when there exists R.C. 2901.04. Because that section speaks to statutory construction of criminal offenses and penalties, we cannot unilaterally declare a statute to be unambiguous without first undertaking analysis by which we strictly construe sections of the law defining offenses or penalties against the State and liberally construe them in favor of the accused. R.C. 2901.04(A). Where there exists ambiguity in the definition of a criminal offense, we must construe its application in favor of the accused and against the State. *Id.* We have previously done so in cases such as *Smith* and *Mobarak,* and we continue to follow this charge by finding that the crimes with which this Mobarak have been charged did not exist at the time he was alleged to have committed them.

{¶ 20} The State finally notes that the United States Supreme Court recently decided a case discussing federal statute, 21 U.S.C. 813, which provides that controlled substance analogs are to be treated "for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. 813; *McFadden v. United States*, _ U.S. _, 135 S.Ct. 2298 (2015). This, argues the State, shows that R.C. 3719.013's language was sufficient to make possession and sale of controlled substance analogs criminal in Ohio also. However, R.C. 3719.013 is not a part of R.C. Title 29, nor did R.C. Title 29 reference it. In

No. 16AP-162

fact, the definition of "Schedule I" adopted by R.C. Title 29 prior to December 2012 expressly included a number of different statutes which together explained the content of the drug schedules (R.C. 3719.01, 3719.41, 3719.43, and 3719.44) but did not include R.C. 3719.013.

{¶ 21} By contrast, even in 2011, when the defendant in *McFadden* was under investigation, 8 U.S.C. 813 was in the same title and chapter as the positive prohibition on drug possession and sale. *Compare* 21 U.S.C. 813 *with* 21 U.S.C. 841. Moreover, section 841, which contains the prohibition on possession and sale, specifically mentions controlled substance analogs, and it did so in 2011 as well. 21 U.S.C. 841(b)(7). Despite the existence of similar language in R.C. 3719.013 and 21 U.S.C. 813, the Ohio Revised Code and the United States Code differ. The Ohio Revised Code (as it existed before December 2012) presented a number of ambiguities concerning controlled substance analogs and their inclusion in the criminal code that were not and are not present in federal law. Even if the United States Code was unambiguous in its prohibition of controlled substance analogs in 2011, the Ohio Revised Code was not. Moreover, we have previously explained why *McFadden*, which was not a direct challenge to the clarity of the federal scheme, but rather, concerned a question about scienter, is distinguishable.

> [T]he United States Supreme Court in *McFadden* was not asked to directly interpret the 'shall be treated' language in the Controlled Substance Analogue Enforcement Act of 1986. The issue before the United States Supreme Court concerned the knowledge necessary for conviction under the Controlled Substances Act ("CSA") when the controlled substance at issue is an analog. The United States Supreme Court merely assumed that the analog was included as a controlled substance for purposes of interpreting the mens rea requirement in the CSA. Therefore, we do not find that *McFadden* demands a different result in the present case.

*Mobarak* at ¶ 10.

{¶ 22} The State's sole assignment of error is overruled.

## IV. CONCLUSION

{¶ 23} Based on our precedent and the reasoning expressed herein, we again hold that prior to December 26, 2012 it was not a criminal act to posses or sell controlled

No. 16AP-162

substance analogs in Ohio. The State's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK , J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

————————

LUPER SCHUSTER, J., concurring in judgment only.

{¶ 24} I concur in judgment only because while I agree with the majority that the trial court decision should be affirmed, I would do so based solely on the precedent of this court in *State v. Smith,* 10th Dist. No. 14AP-154, 2014-Ohio-5303.